489 So.2d 948 (1986)
Debra A. Cotton BOUDREAUX, et al.
v.
Nora MURRAY, et al. and Industrial Indemnity Company.
No. 85-CA-549.
Court of Appeal of Louisiana, Fifth Circuit.
May 12, 1986.
Rehearing Denied June 17, 1986.
*949 Perrin C. Butler, Perrin Butler, Ltd., Metairie, for plaintiffs-appellants, cross-appellees.
Eugene D. Brierre, New Orleans, for defendant-appellant Indust. Indem. Co.
Gordon M. Johnson and William G. Argeros, Porteous, Hainkel, Johnson & Sarpy, *950 New Orleans, Jerome M. Volk, Jr., Kenner, for defendants-appellees.
Before KLIEBERT, BOWES and DUFRESNE, JJ.
BOWES, Judge.
All parties, except State Farm Mutual Automobile Insurance Company, have appealed a judgment of the trial court in favor of the plaintiff, Debra Boudreaux, and against Industrial Indemnity Company and awarding her the sum of $67,322.13 in damages. We amend the judgment as follows.
On April 8, 1983, plaintiff Debra Boudreaux was involved in an automobile accident with Mrs. Nora Murray in Kenner, La. Mrs. Boudreaux was driving a 1983 Chevrolet Malibu sedan, owned by Bryan Chevrolet Company and loaned to her (as will be developed more fully hereinafter). Mrs. Boudreaux's two minor children, David and Dana, were passengers in the vehicle. Mrs. Murray received a traffic citation for failure to yield or stop, to which ticket she pleaded guilty. The trial judge found that Mrs. Murray's negligence was the sole cause of the accident, and her liability is not contested on appeal.
Following the accident, Mrs. Boudreaux and the children were treated at the emergency room of East Jefferson General Hospital. David, who sustained a bump on his head, and Dana, who had apparently been struck on the side of the face, suffered no serious injuries and received no further medical treatment. Mrs. Boudreaux, however, suffered more severe injuries to her neck, which eventually resulted in re-fusion surgery, in September of 1983, of two cervical discs in her neck, which had previously been surgically fused (C-5/6 in 1976 and C-4/5 in 1978).
Following the surgery, Mrs. Boudreaux and her husband filed suit on their own behalf and on behalf of the estates of their minor children. Made defendants were Mr. and Mrs. Murray and their insurer, State Farm Mutual Automobile Insurance Company (hereinafter referred to as State Farm); plaintiffs also sued State Farm as their own uninsured/underinsured motorist carrier.
Plaintiffs subsequently amended their claim to join Industrial Indemnity Company (hereinafter known as Industrial) as the uninsured motorist carrier on the Bryan vehicle. Industrial filed a third party demand against the Murrays, alleging their liability in solido with Industrial in the event judgment was rendered against Industrial.
The plaintiffs and Industrial both filed motions for summary judgment, which were denied. Industrial also filed an exception of no cause or no right of action, which was denied.
Prior to trial, Debra Boudreaux settled her claim against the Murrays and State Farm for the policy limits of $10,000.00, reserving her rights against all remaining defendants. At the same time, Mrs. Boudreaux settled her claim against State Farm under the uninsured motorist coverage of her policy on her personal vehicle for $25,000.00. On January 17, 1985, the general terms of this partial release were read into the record; germane to our present inquiry is the stipulation:
There is an agreement that we will agree to repay State Farm the twenty-five thousand ($25,000) dollar UM coverage if the primary policy is held to be liable, that Mr. Brierre represents, or if a settlement is made with that insurer, they will receive first dollars, the twenty-five thousand ($25,000) on that.
At that time, it was also stipulated that the agreements would be reduced to writing, and the validity of these agreements is not challenged.
The case then proceeded to trial. After the first day of trial, the court rendered a judgment, a peremptory exception granted ex proprio motu, dismissing the third party demand filed by Industrial "in that under Article 927 of the Civil Code of Procedure that there is no right of action against Nora M. Murray or Tom A. Murray."
*951 After completion of the trial, the court held Industrial responsible to Mrs. Boudreaux for damages, awarding her $60,000 in general damages; $120.00 as medical costs for the injuries to the children; and $7,162.13 for her own medical expenses. The court felt that Mrs. Boudreaux did not establish a loss of business as a result of the accident and so denied compensation in that area. The court did not address the loss of consortium, services and society, claimed by Mr. Boudreaux on his own behalf and that of the two children.
Plaintiff's Assignments of Error
First, plaintiff alleges the trial court erred in failing to award her damages for the cost of hiring a replacement employee in her automobile service business; and, secondly, that it was error to fail to make an award for impairment of earning capacity.
Plaintiff testified that she was the owner and operator of her own automobile repair business, and stated emphatically that her husband worked for her. At her business, she did much of the mechanical work, including brake jobs, tune-ups, and electrical work. Following the accident and surgery, she was unable to continue in this work without severe pain and was eventually obliged to hire a replacement employee. The employee had been working for Mrs. Boudreaux for one year at the time of the trial, and plaintiff averred that a replacement would always be necessary.
A brief summary of the medical testimony is appropriate here. Dr. Randall Williams, plaintiff's treating physician, testified that in October of 1983 following the surgery, Mrs. Boudreaux was advised that she could return to work. In December, she stated to Dr. Williams that she had been doing well at work except for occasional headaches. The fusion appeared to be healing. By April, 1984, the headaches were severe. Dr. Williams advised plaintiff to see a neurologist. In July, she began to experience numbness on one side, while her headaches had improved. An EMG by Dr. Fleming, the neurologist, was normal. In September and October of 1984, she complained of back pain. She was advised to see another specialist in rheumatology and related diseases. Plaintiff was advised to continue her program with Dr. Fleming and the rheumatologist, Dr. Eversmeyer.
Mrs. Boudreaux was diagnosed as having fibrositis (fibrous tissue inflammation), secondary to her degenerative disc disease of the cervical spine.
While Dr. Williams did not specifically state that Mrs. Boudreaux could never return to work as a mechanic, he advised that she should not work overhead, do heavy-lifting, pulling, etc. In essence, the doctor stated that if plaintiff experienced pain in any activity, then she should refrain from it. Finally, he assigned a permanent partial entire body disability rating of 20%.
Dr. Claude Williams, who examined Mrs. Boudreaux at defendant's request, testified that she was able to do light work. Mrs. Boudreaux herself testified that she is unable to perform her former job without experiencing severe pain.
It is clear from the testimony that Mrs. Boudreaux would not have been obliged to hire a replacement employee for the one year preceding this trial but for her injury and resultant disability. There was no evidence presented at trial that a loss of general business profits ensued from the enforced retirement of Mrs. Boudreaux as a mechanic, although such loss was claimed by plaintiff.
It seems evident that, while Mrs. Boudreaux worked in her business as a mechanic, she derived her income not from a salary as a mechanic but from the business itself; that is, her earnings came from her operations as owner and manager of the garage. There is nothing in the record to indicate that Mrs. Boudreaux is no longer able to own and operate her business, but only that she was unable to continue as an active mechanic in that endeavor. In this connection, we note the following jurisprudence:
But the full indemnification to which an injured party is entitled under Article *952 2315 (Jordan v. Travelers Insurance Co., 257 La. 995, 245 So.2d 151 (1971)) includes damages for decreased earning capacity which is determined by deducting plaintiff's earning ability after the injury from his earning ability immediately prior to the injury rather than by deducting his income after the injury from his income prior to the injury. Coco v. Winston Industries, 341 So.2d 332 (La.1977)
In determining an injured person's net economic loss caused by impairment of earning capacity, one of the factors to be considered is the availability of reasonable employment opportunities for which the claimant is suited by education, experience and physical capacity. [...]
Other factors which may be considered in fixing awards of impairment of earning capacity are age, life expectancy, work life expectancy, investment income factor, productivity increase, prospects for rehabilitation, probable future earning capacity, loss of future earning capacity, loss of earning ability, and the inflation factor.
[10, 11] Dunaway v. Rester Refrigeration Service, Inc., 428 So.2d 1064 (La.App. 1 Cir.1983), citations omitted.
Considering the above jurisprudential factors, together with our preceding determination that Mrs. Boudreaux's earnings or income were derived from her position as owner and manager of the business, we find no basis for an award of impairment of earning capacity.
Neither are we persuaded that the expenses of hiring a replacement employee for the next 19.6 years (Mrs. Boudreaux's work life expectancy) is the proper measure of damages in this particular case. The record discloses that plaintiff's automobile repair business had been in operation for approximately one year prior to the accident. Shortly after the accident and the resultant surgery, Mrs. Boudreaux ceased most operations as a mechanic herself, but the business endured. There was no evidence of loss of profits or decreased business receipts. Moreover, Mrs. Boudreaux apparently is capable of doing some light mechanical work if she so chooses. The medical testimony does not convince us that plaintiff will never, at any future date, be able to resume any or some of her former activities as a mechanic. Therefore, an award for future payments for a replacement employee is not justified under the circumstances of the case.
However, it is undisputed that plaintiff needed a replacement in the year preceding the trial. Testimony established that the salary plus expenses of the substitute amounted to $11,823.24. The judgment is amended to reflect that that sum is awarded to plaintiff as compensation for past expenses. See Poche v. Frazier, 232 So.2d 851 (La.App. 4th Cir.1970).
Plaintiff's third specification of error is that the trial court erred in awarding only $60,000 in general damages. After examining the record, we find that the evidence justifies an increase of the general damage award.
In making the general damage award, the trial court stated that the accident weakened the areas of plaintiff's previous operations. The court made no mention of a very serious result of the accidentthat is, Dr. Randall Williams' assessment of a 20% permanent partial entire body disability rating. There is no discussion in the judgment of the diagnosis of "secondary fibrositis," which Dr. Williams described as a significant problem. The court did not apparently consider Mrs. Boudreaux's other limitationsshe can accompany her family on golf outings, yet she herself is unable to play the game she formerly enjoyed. In other family outings, she is able to attend but not fully participate. She presently has significant limitations in all her physical activities.
The Supreme Court, in Reck v. Stevens, 373 So.2d 498 (La.1979), cautioned:
Before a trial court award may be questioned as inadequate or excessive, the reviewing court must look first, not to prior awards, but to the individual *953 circumstances of the present case. Only after analysis of the facts and circumstances peculiar to this case and this individual may a reviewing court determine that the award is excessive.
With regard to appellate review of the much discretion of the trier of fact in the award of general damages, La.C.Civ.P. art. 1934(3), we stated
. . . . .
"The law is plain and means what it says, and it is the duty of all appellate courts to follow it. Under this rule the amount of damages assessed by the judge or jury should not be disturbed unless the appellate court's examination of the facts reveals a clear abuse of the discretion vested in the trial court.... The facts and circumstances in the other neck injury awards, relied upon by respondent as showing that this award was all out of proportion with the previous awards for similar injuries, causes them to have little or no relevancy for purposes of demonstrating the excessiveness of this award."
Thus, the initial inquiry must always be directed at whether the trier court's award for the particular injuries and their effects upon this particular injured person is, a clear abuse of the trier of fact's "much3 discretion," La.Civ.C. art. 1934(3) in the award of damages. It is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review, for articulated reason, be considered either excessive, or insufficient.
. . . . .
Only after such determination of abuse has been reached, is a resort to prior awards appropriate under Coco for purposes of then determining what would be an appropriate award for the present case.
We have, under the analysis given in Reck, thus determined that the damage award granted by the trial court was inadequate and manifestly erroneous under the particular circumstances of this case, because of the facts which the trial judge evidently failed to consider.
In Wilson v. Wal-Mart Stores, Inc., 448 So.2d 829 (La.App. 2nd Cir.1984), an award for $100,000 was affirmed for a 49-year old woman who suffered a 20% permanent disability after injuring her back.
In Williams v. City of New Orleans, 433 So.2d 1129 (La.App. 4th Cir.1983), an award of $125,000 was affirmed for a woman who suffered a herniated cervical disc and underwent disc fusion. Additional surgery was recommended but refused by that plaintiff; she elected to continue medical and chiropractic treatment. Plaintiff was unable to remain employed because of the pain and discomfort she experienced.
Considering the above comparable cases, we find that a general damage award of $100,000 is sufficient to compensate Mrs. Boudreaux for her damages.
Plaintiff also alleges error in the trial court's failure to make a general damage award to the minor children, injured slightly in the accident. The court gave no reason for its failure to grant damages, and allowed only the medical expenses of the children. Because the trial court must have found the accident to be the cause of the injuries to the children if it awarded medical expenses for their treatment and, since there is no rational reason to differentiate the cause of their injuries from that of Mrs. Boudreaux's injuries, the court erred in failing to award damages, however minor the injuries may have been. See Ainsworth v. State Farm Auto. Ins. Co. 399 So.2d 1242 (La.App. 3rd Cir.1981).
David sustained a bump, or "hickey", on his head; Dana was hit on one side of her face. Both children were treated and released, but were upset (particularly Dana) and both missed school that day. We find an award of $200.00 each will adequately compensate them for their damages.
Finally, plaintiff contends that the court erred in failing to make an award on behalf of Mr. Boudreaux and the children for loss of consortium, services and society *954 of Mrs. Boudreaux. We find no error in this portion of the judgment.
The children did not testify at trial. Mr. Boudreaux stated that, as a result of the accident, the children assumed ordinary household tasks and he, himself, had to help David, Jr. with his homework for a time (a chore previously undertaken by his wife). Mrs. Boudreaux accompanies the family on weekend outings, although she is unable to fully participate in such activities as golf. The family cannot plan definitely on such social events as family dinners, Mardi Gras plans, etc.
The learned trial judge apparently felt that these facts and the testimony does not establish a claim of loss of consortium, services and society. There is very little evidence that either Mr. Boudreaux or the children were affected by the plaintiff's injuries in this respect. This is an area of broad discretion with the trial judge and we cannot say that he was manifestly erroneous in failing to make such an award.
State Farm
Defendant-appellee State Farm has submitted a brief on two issues in this case. However, we can discover no appeal nor answer to the appeal and, therefore, we do not address the issues presented by State Farm.
Cross-Appeal of Industrial Indemnity
Industrial Indemnity has specified a number of errors on appeal. Industrial avers that the trial court erred in dismissing its motion for summary judgment and its exceptions of no right and no cause of action. However, these issues were not briefed by the defendant and, under the Uniform Rules of the Courts of Appeal 2-12.4, are considered abandoned. Additionally, there are no written judgments in the record dismissing the motion and exceptions for us to consider on appeal. Thus we will not address these assignments of error.
Industrial argues that the trial court erred in holding that it (Industrial) had coverage of the particular automobile under the policy so as to hold it the primary uninsured motorist carrier. An examination of the policy, as well as a review of the testimony, convinces us that the trial judge was correct in his determination that Industrial is the primary insurer in the present case.
Mrs. Boudreaux testified that she approached Bryan Chevrolet in order to purchase a 1984 Corvette. Because the car was a brand new model, and had, in fact, not been formally "shown", the auto could not be delivered to Mrs. Boudreaux for two to three weeks after purchase. Also because it was a brand new model, Mrs. Boudreaux was obliged to pay the "sticker price" if she wanted the car, approximately $23,000$29,000. As part of the deal, Mrs. Boudreaux agreed to trade in her old car. She was told by the salesman that she would have to leave her car at the dealership because it was a "trade-in"; she did not want to leave her car because she would have been left without transportation until the Corvette was delivered. Mr. John Spears, the salesman, lent Mrs. Boudreaux the automobile in which she was subsequently injured.
Mr. Spears testified that he spoke to one of the managers as to whether to take the Boudreauxes' old car and loan them a vehicle. This manager, Mr. Troyer, told him "to go ahead and give them a demonstrator. I don't remember why, they might have had somebody that they wanted to show this car to, I don't knowthe used car to sell. Sometimes they do that."
It is clear that in order to assure the sale, which meant substantial profit to Bryan, according to Mr. Spear, Bryan accepted Mrs. Boudreaux's trade-in; in order to meet her objections, the company loaned her the disputed vehicle.
Bryan's insurance policy with Industrial contains the following pertinent definitions and clauses:
Under "Coverage Part II, Automobile Premises and Operations Liability", a rental auto is defined:
c. "Customer rental auto" means an automobile owned by the named insured *955 and rented, used or possessed by a customer of the Named Insured with the named insured's permission, while such customer's automobile is temporarily left with the insured for service, repair or sale; or when such customer's automobile has been stolen; or while a customer awaits delivery of an automobile following the completion of a written purchase or lease agreement with the insurd. (sic)
d. "Demonstrator" means an automobile:
i. designated on the books and records of the insured as a demonstrator or company automobile; and iv. used regularly and frequently for demonstration purposes in the automobile sales operation of the insured by an employee of the insured.
"Covered auto" means an automobile owned or hired by or consigned to the named insured which is:
a. held for sale; or
b. used in the automobile business of the insured, or
c. a customer rental auto, or
d. a company auto, or
e. held by the insured pending removal from the insured's premises after sale; after only while the covered autos are in the actual possession of the insured or bailee of the insured.
Under the uninsured motorists' portion of the policy, more particular definitions are given:
B. WE WILL PAY
1. We will pay all sums the insured is legally entitled to recover as damages from the owner or driver of an uninsured motor vehicle. The damages must result from bodily injury sustained by the insured caused by an accident. The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the uninsured motor vehicle.
Under section D "Who is Insured", we find:
D. . . .
2. Anyone else occupying a covered auto or a temporary substitute for a covered auto ...
The uninsured motorist portion of the policy broadens and expands the liability coverage.
Defendant contends that the automobile being used by the plaintiff was a "demonstrator" and therefore not a "covered auto" as was apparently concluded by the trial judge. We find, however, no matter what name defendant may have chosen to call the auto in dispute, that it falls securely within the definition of a "customer rental auto", as it was owned by Bryan, used by a customer with Bryan's permission, while Mrs. Boudreaux's car was left with Bryan for sale. Further, it is also an automobile used in the business of Bryan (II, B, above). Under "Covered Autos", the vehicle being driven by the plaintiff fell into category (b) and/or (c). As a person occupying a covered auto, Mrs. Boudreaux was covered under part D(2) of the uninsured motorist policy ("Who is Insured"see above).
Defendant urges that another portion of the policy is applicable. Under Section D, "Who Is An Insured", of the liability policy, it is stated:
1. For Covered Autos.
a. You are an insured for any covered auto.
b. Anyone else is an insured while using with your permission a covered auto except: [...]
(3) Your customers, if your business is shown in the General Declarations as an auto dealership. However, if a customer of yours:
(a) Has no other available insurance (whether primary, excess or contingent), he or she is an insured but only up to the compulsory or financial responsibility law limits where the covered auto is principally garaged.
(b) Has other available insurance (whether primary, excess or contingent) less than the compulsory or financial responsibility law limits where the covered auto is principally garaged, *956 he or she is an insured only for the amount by which the compulsory or financial responsibility law limits exceed the limits of his or her other insurance.
However, it is apparent that the uninsured motorist policy broadens the coverage of "who is insured", quoted hereinabove, and the U.M. policy is the operative one. We find, as did the trial court, that Mrs. Boudreaux was covered under the uninsured motorist portion of the policy.
La.R.S. 22:1406 D(1)(c)(i & ii) states:
With respect to bodily injury to an injured party while occupying an automobile not owned by said injured party, the following priorities of recovery under uninsured motorist coverage shall apply:
(i) The uninsured motorist coverage on the vehicle in which the injured party was an occupant is primary;
(ii) Should that primary uninsured motorist coverage be exhausted due to the extent of damages, then the injured occupant may recover as excess from other uninsured motorist coverage available to him. In no instance shall more than one coverage from more than one uninsured motorist policy be available as excess over and above the primary coverage available to the injured occupant.
Of the settlement payments made by State Farm prior to trial, only $10,000 was paid under the liability policy of the Murrays. $25,000 was paid by State Farm under its U.M. policy with the Boudreauxes as settlement providing it was found to be the primary carrier following the trial. At the time of the oral stipulation preceding the written agreement, counsel for Industrial was present and aware of the terms. The reasons for judgment make it clear that one major issue to be decided at trial was a determination as to which company, State Farm or Industrial, was the primary carrier. As the astute trial judge correctly found, Industrial is indeed the primary insurer. State Farm is only liable once Industrial's coverage is exhausted. It appears from the record that the limits of Industrial's policy are far in excess of the total awarded here, and therefore State Farm's excess coverage has not been reached.
Defendant's interpretation of the judgment, that it should receive a credit of $35,000, is illogical in that such would result in a double loss to plaintiff, because plaintiff is contractually obligated to State Farm, its own U.M. carrier, under the stipulation entered into before the trial began, to repay to them the $25,000 settlement made with State Farm. Therefore, plaintiff would receive $25,000 less than the trial court found she was due. Because Industrial and not State Farm is found to be the primary insurer, State Farm is not liable for any payments under its U.M. policy with the Boudreauxes until Industrial's limits become exhausted. Therefore, under the circumstances of the case, Industrial may not receive the benefits of any payments made by State Farm in anticipation that it (State Farm) would be found liable. Industrial is entitled to a credit of only $10,000.00 on the judgment.
For the foregoing reasons, the judgment of the trial court is amended to reflect the following awards:

General damages for Mrs.
 Boudreaux $100,000.00
Medical Expenses for Mrs.
 Boudreaux 7,162.13
Medical Expenses for David
 and Dana Boudreaux 120.00
General damages for David
 Boudreaux 200.00
General damages for Dana
 Boudreaux 200.00
Amount of salary and costs for
 replacement employee 11,823.24
 __________
Total Damages $119,505.37
Credit to Industrial -10,000.00
 ___________
Net damages $109,505.37

In all other respects, the judgment of the trial court is affirmed. Defendant Industrial is taxed with all costs of this appeal.
AMENDED AND AFFIRMED.
KLIEBERT, Judge, dissenting.
I respectfully dissent from the majority opinion.