Harry **BOUDREAUX, Plaintiff-Appellee, Cross-Appellant,**

v.

**OPTIMUM INSURANCE COMPANY et al.,**

**Continental Insurance Companies and Safeco Insurance Company, Defendants-Appellants.**

No. 87–4525.

United States Court of Appeals, Fifth Circuit.

Sept. 2, 1988.

Rehearing Denied Oct. 11, 1988.

John A. Bivins, Lafayette, La., for Continental Ins. Co.

James R. Shelton, Lafayette, La., for Safeco Ins. Co.

Gordon Hackman, Boutte, La., Leslie Schiff, Opelousas, La., for Harry Boudreaux.

Before RUBIN, GARZA and JONES, Circuit Judges.

GARZA, Circuit Judge:

Boudreaux brings this uninsured motorist claim following a collision on November 22, 1983 with Michael J. Kimble who had limits of $5000 per person and $10,000 per accident. It is undisputed Kimble was responsible for the collision. All issues were tried to the court except for damages on which the jury awarded $200,000.

The collision occurred at the intersection of Interstate 10 and U.S. Highway 167 where Boudreaux was rearended. Boudreaux did not sue Kimble nor his insurer American Southern Insurance Company. He did however sue three insurance companies—Optimum Insurance Company of Illinois, Continental Insurance Companies and Safeco Insurance Company of America.

Optimum carried the insurance for LeBlanc & Broussard Ford Inc. and Iberia Car Rental, Inc. LeBlanc and Iberia are related corporations. LeBlanc sold Boudreaux his new vehicle and arranged with Iberia to provide Boudreaux an automobile while his vehicle was being serviced. Boudreaux was in the Iberia vehicle when the collision occurred.

Early in this lawsuit Optimum was dismissed as a party because it filed for rehabilitation in a Cook County Circuit Court in Illinois. The Illinois Court entered an order enjoining the institution of suit against Optimum. Thus, on October 29, 1985 Optimum was dismissed as a party. The Optimum policy carried uninsured motorist limits of $300,000.

The second company involved in this suit is Continental which provided Boudreaux's employer Johnson Screens Universal Oil Products, Inc., a subsidiary of the Signal Companies, with insurance coverage. The Signal Companies are based in California. Johnson Screens does business in Louisiana. Continental is a party because Boudreaux was in the scope of his employment when the collision occurred. The Continental policy provided $250,000 limits for bodily injury liability without specifically pro-

viding for or waiving uninsured motorist coverage in the policy itself or in any supplemental document.

Finally, Safeco insured Boudreaux's personal vehicle which, as previously stated, was being serviced by LeBlanc on the day of the collision. The Safeco policy contained uninsured limits of $100,000.

The district court held Optimum, Continental and Safeco were each primary carriers, however the exclusion language in the Optimum policy would relieve it of liability. Thus, the district court apportioned the $200,000 award between Continental and Safeco *in solido* based on their respective coverages. After receiving credit for Kimble's $5000 liability policy, Continental was liable for 71% or $138,450 and Safeco was liable for 29% or $56,550. The district court additionally held neither Continental nor Safeco acted arbitrarily, capriciously or without probable cause in handling Boudreaux's claim, thus denying Boudreaux's claim for penalties and attorney's fees pursuant to La.Rev.Stat.Ann. § 22:658 (West 1978).

We are reversing the district court's holding that the exclusion language in Optimum's policy allowed Optimum to avoid its liability. We also reverse the holding that Safeco's policy provided primary coverage. We are upholding the Court's finding that Continental's policy provided primary coverage as well as the application of Louisiana law to that policy. We are also upholding the $150,000 jury award for general damages to Boudreaux and reducing the $50,000 award for future medical to

$19,800. Finally, we are upholding the district court's denial of penalties and attorney's fees for Boudreaux.

I

The Louisiana uninsured motorist statute embodies a strong public policy.[1] *Roger v. Estate of Moulton,* 513 So.2d 1126, 1130 (La.1987) (citing *A.I.U. Ins. Co. v. Roberts,* 404 So.2d 948 (La.1981); *Breaux v. Government Employees Ins. Co.,* 369 So. 2d 1335 (La.1979)). "The object of the statute is to promote the recovery of damages for innocent automobile accident victims by making uninsured motorist coverage available for their benefit as primary protection when the tortfeasor is without insurance, and as additional or excess coverage where he is inadequately insured." *Id.* (citing *Block v. Reliance Ins. Co.,* 433 So.2d 1040 (La.1983); *Johnson v. Fireman's Fund Ins. Co.,* 425 So.2d 224 (La.1982); *Hoefly v. Government Employees Ins. Co.,* 418 So. 2d 575 (La.1982)). This statute is to be liberally construed to carry out its objective, *Hoefly,* at 578, and mandates uninsured motorists protection. *Niemann v. Travelers Ins. Co.,* 368 So.2d 1003, 1006 (La.1979).

The Louisiana Supreme Court has also stated "No insurance contract can include any provision inconsistent with or contradictory to any standard provision used or required to be used by the applicable sections of the Insurance Code. [La.Rev.Stat. Ann. § 22:623]. Any policy provision which narrows the coverage mandated by the statute will not be considered." *Block,*

---

**1.** The effective version of La.Rev.Stat.Ann. § 22:1406(D)(1)(a) stated:

(1)(a) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including

death, resulting herefrom; provided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing the coverage or selects lower limits. Such coverage need not be provided in or supplemental to a renewal or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer. Any document signed by the named insured or his legal representative which initially rejects such coverage or selects lower limits shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto.

*supra* at 1044. *See also, Bond v. Commercial Union Assurance Co.,* 407 So.2d 401, 409 (La.1981); *Breaux, supra* at 1337–1338; *Seaton v. Kelly,* 339 So.2d 731, 733–734 (La.1976); *Deane v. McGee,* 261 La. 686, 260 So.2d 669, 673 (1972).

A second section pertinent to this appeal is La.Rev.Stat.Ann. § 22:1406(D)(1)(c) (West 1978).[2] Louisiana Courts have held the purpose of this section is to prevent stacking of uninsured/underinsured motorist policies. *E.g. Duhe v. Maryland Casualty Co.,* 434 So.2d 1193, 1196 (La.App. 1st Cir.1983). However, there is a limited exception to the anti-stacking rule. The exception occurs when:

(1) the injured party is occupying an automobile not owned by him;

(2) the [uninsured motorist] coverage on the vehicle on which the injured party was an occupant is primary; and

(3) should that primary [uninsured motorist] coverage be exhausted due to the extent of damages, then the injured occupant may recover as excess from other [uninsured motorist] coverage available to him.

**2.** Section 22:1406(D)(1)(c) states:

(c) If the insured has any limits of uninsured motorist coverage in a policy of automobile liability insurance, in accordance with the terms of Subsection D(1), then such limits of liability shall not be increased because of multiple motor vehicles covered under said policy of insurance and such limits of uninsured motorist coverage shall not be increased when the insured has insurance available to him under more than one uninsured motorist coverage provision or policy; provided, however, that with respect to other insurance available, the policy of insurance or endorsement shall provide the following:

*With respect to bodily injury to an injured party while occupying an automobile not owned by said injured party, the following priorities of recovery under uninsured motorist coverage shall apply:*

(i) *The uninsured motorist coverage on the vehicle in which the injured party was an occupant is primary;*

(ii) Should that primary uninsured motorist coverage be exhausted due to the extent of damages, then the injured occupant may recover as excess from other uninsured motorist coverage available to him. In no instance shall more than one coverage from more than one uninsured motorist policy be available as excess over and above the primary coverage

*Id.* at 1197 (citing *Courville v. State Farm Mut. Auto. Ins. Co.,* 393 So.2d 703, 705 (La.1981); *Nall v. State Farm Mut. Auto. Ins. Co.,* 398 So.2d 201 (La.App. 3d Cir.), *aff'd,* 406 So.2d 216, 218 (La.1981)).

■ Applying both sections to the present situation leads us to conclude Optimum is a primary carrier. The exclusion language in the Optimum policy narrowed the uninsured motorist coverage as mandated by La.Rev.Stat.Ann. § 22:1406(D)(1)(a) when read in conjunction with La.Rev.Stat.Ann. § 22:1406(D)(1)(c). We read 22:1406(D)(1)(c) as requiring the uninsured motorist carrier on the vehicle in which the non-owner occupant was injured to be primary. *See generally* McKenzie, *Louisiana Uninsured Motorist Coverage-After Twenty Years,* 43 La.L.Rev. 691 (1983). Thus, the same uninsured motorist carrier may not write into its policy exclusion language to relieve itself of liability. Therefore, the exclusion language contained in the Optimum policy will not be given effect.[3]

■ The second insurance carrier, Continental, insured Boudreaux's employer.[4]

available to the injured occupant. (emphasis added).

**3.** The Optimum policy states in part:

"INSURED HIGHWAY VEHICLE means a HIGHWAY VEHICLE:
(a) described in the schedule on the Declarations Page of this Coverage Part as an INSURED HIGHWAY VEHICLE to which BODILY INJURY Liability coverage applies under a Coverage Part of the policy;"

Under the Additional Conditions section:
"D. OTHER INSURANCE. With respect to BODILY INJURY to an INSURED while OCCUPYING a HIGHWAY VEHICLE not owned by the NAMED INSURED, this insurance shall apply only as excess insurance over any other similar insurance available to such INSURED and applicable to such vehicle as primary insurance, and this insurance shall apply only as excess insurance over any other similar insurance available to such INSURED and applicable to such vehicle as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of such other insurance."

**4.** The Continental policy states in part:
"12. *'Insured'* means any person or organization qualifying as an insured in the 'Persons

Since Boudreaux was in the scope of his employment at the time of his collision, we conclude his employers' insurance carrier is also a primary carrier. *Capone v. King*, 467 So.2d 574, 580 (La.App. 5th Cir.) *cert. denied*, 468 So.2d 1203, 1205 (La.1985).[5] The plaintiff, Capone, was an occupant in a non-owned automobile which was involved in a collision with an uninsured motorist. The owner of the vehicle was Mr. Coffer. At the time of the collision, Mrs. Coffer was operating the vehicle in the scope of her employment. The court held the insurance carriers for Mrs. Coffer's employer were primarily liable. *Id.* at 580.

Continental argues, if they are held to a primary insurer then the California Insurance Code should apply to setting the limits of uninsured motorist protection. Applying California law would place a $30,000 cap on the uninsured motorist policy. Continental contends the policy was issued and delivered in California, thus to apply Louisiana law would be incorrect. Each state has a great interest in the matters that occur within its boundaries and to its citizens. Louisiana is no exception in adopting a strong uninsured motorist statute which has certain methods of waiving or limiting

an insured's coverage. Continental's insured, Johnson Screens, does business in Louisiana and the district court found, contrary to Continental's position, that "the policy was issued for delivery in Louisiana with respect to a motor vehicle registered and principally garaged in Louisiana." Following *Roger v. Estate of Moulton*, 513 So.2d 1126 (La.1987), we conclude Louisiana law should apply. In *Roger*, the supreme court held a vehicle registered, garaged and licensed in the State of Louisiana would be subject to the Louisiana uninsured motorist statute despite the policies not being delivered or issued for delivery in Louisiana. *Id.* at 1130–1131. Therefore, in accordance with 22:1406(D)(1)(a), Continental is held to have provided uninsured motorist protection equal to the liability coverage in the amount of $250,000.

■ The final company, Safeco, wrote the insurance coverage for Boudreaux's personal vehicle. The policy contained a provision for coverage of a temporary substitute vehicle.[6] It is argued by Continental pursuant to the temporary substitute vehicle clause that Safeco's policy should be primary. We disagree. It appears un-

---

Insured' provision of this policy. The insurance afforded applies separately to each insured against whom claim is made or suit is brought except with respect to the limits of the Company's liability.

\*   \*   \*   \*   \*   \*

17. *'non-owned automobile'* means an automobile which is neither an owned automobile nor a hired automobile.

\*   \*   \*   \*   \*   \*

III. PERSONS INSURED
Each of the following is an insured to the extent set forth below:

\*   \*   \*   \*   \*   \*

B. any person while using an owned automobile or hired automobile and any person or organization legally responsible for the use thereof provided the actual use of the automobile is by the Named Insured or with his permission, and *any officer or employee of the Named Insured with respect to the use of a non-owned automobile in the business of the Named Insured;*"

5. We note the Louisiana Supreme Court has granted writ in *Stewart v. Robinson*, 521 So.2d 1241 (La.App. 3d Cir.), *writ granted*, 526 So.2d 785 (La. 1988). The *Stewart* case disagrees with the *Capone* case "to the extent that *Capone*

concludes that uninsured motorist coverage is statutorily mandated in favor of persons who are not insureds under the liability provisions of the policy."

From the language in the Continental policy, it is clear Boudreaux was an insured for liability purposes. Thus, the point in which *Stewart* disagrees with *Capone* has been satisfied. *See Stewart* at 1246.

6. The Safeco policy states in part:
"*'temporary substitute automobile'* means any automobile or trailer, not owned by the named insured, while temporarily used with the permission of the owner as a substitute for the owned automobile or trailer when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction;
Under the PROTECTION AGAINST UNINSURED MOTORISTS *'insured automobile'* means:
(a) an automobile described in the policy for which a specific premium charge indicates that coverage is afforded,

\*   \*   \*   \*   \*   \*

(c) a temporary substitute automobile for an insured automobile as defined in (a) or (b) above. . . ."

der Louisiana law the personal policy of an insured operating a non-owned vehicle will be the excess carrier. *Deane v. McGee*, 261 La. 686, 260 So.2d 669, 671 (1972); *Boudreaux v. Murray*, 489 So.2d 948 (La. App. 5th Cir.1986). In *Boudreaux v. Murray*, the plaintiff, Boudreaux, traded in her automobile and was awaiting delivery of her new automobile. The dealership provided her with an automobile and it was in this automobile that the collision occurred with the uninsured motorist. State Farm Mutual Automobile Insurance Company provided uninsured motorist protection on Boudreaux's personal vehicle. Industrial Indemnity Company issued the uninsured motorist policy to the dealership. The court concluded Industrial was the primary carrier and State Farm was the excess carrier.

## II

We next address the jury's award of $200,000 including $50,000 for future medical expenses.

> It is not the function of the appellate court, however, to weigh conflicting evidence, judge the credibility of witnesses and arrive at a conclusion opposite from the one reached by the jury, where there is a reasonable basis in the record for the jury's verdict.

*Liberty Mut. Ins. Co. v. Falgoust*, 386 F.2d 248, 253 (5th Cir.1967) (citation omitted).

■ Applying our limited review, we decline to hold the award of $150,000 was excessive under the circumstances. Conflicting testimony was presented sufficient to afford the jury a reasonable basis to support its award. We do, however, believe there is no reasonable basis to support the jury award of $50,000 for future medical expenses. Testimony concerning future medical treatment was limited to Dr. Jean Beleval. Dr. Beleval testified Boudreaux would require treatment approximately once a month for the rest of his life beginning with treatment once a week for approximately the first six months. Boudreaux had a life expectancy of approximately 35 years. Each visit with Dr. Beleval would range between $30 and $45.[7] Presuming Boudreaux would require treatment once a week for six months at $45 would equal $1170. If he then needed treatment once a month for the next 34.5 years, that amounts to $18,630. Thus, to award $50,000 for future medical expenses is excessive in light of this limited evidence presented. We realize these figures are not mathematically perfect, however in calculating them, we have based our calculations on the high end of the probable treatment Boudreaux will require. We also realize these figures are not discounted nor are they adjusted for inflation. We decline to adjust these figures because the parties do not request us to do so. Furthermore, it is clear from the record the jury was not charged as to discounting or adjusting for inflation any award for future medical expenses. No objection was made by any party. Continental discusses an undiscounted figure in their brief, but it is limited to make a point that the $50,000 award is excessive. We therefore order a remittitur to $19,800 for future medical expenses.

## III

■ Our last issue is whether Safeco and/or Continental were arbitrary, capricious or without probable cause in their handling of Boudreaux's claims. La.Rev. Stat. Ann. § 22:658 subjects an insurance company to penalties and attorney's fees for failure to pay a claim within (60) days after receipt of satisfactory proof of loss. A satisfactory proof of loss is one which is sufficient to fully apprise the insurer of the insured's claim. *McDill v. Utica Mut. Ins. Co.*, 475 So.2d 1085 (La.1985).

The district court held notice was received by Safeco and Continental of Boudreaux's claim at the time of filing suit. It was not until August 8, 1986 that proof of Kimble's lack of insurance was provided to Continental and Safeco. The proof was an

---

**7.** Dr. Belavel actually stated each visit would be $30 with an occasional additional charge of $15.

affidavit from the Louisiana Department of Public Safety.[8] On September 29, 1986, Safeco made an unconditional tender in the amount of $27,475.75 which was received on about October 2, 1986. Finally, the district court concluded the amount was reasonable under all circumstances including conflicting medical testimony and the legal questions as to which policies provided coverage.

After reviewing the record, we cannot conclude the district court's decision was in error. There was a bonafide dispute among Safeco and Continental as to the ranking of the insurance policies, as well as the extent of Boudreaux's injuries. Furthermore, once Safeco had reviewed evidence of Kimble's uninsured status and medical expenses they promptly tendered a reasonable sum to Boudreaux's attorney. We do not believe the actions of Safeco and Continental would warrant awarding fees pursuant to section 22:658.

### IV

In conclusion, we are holding Optimum and Continental to be primary carriers under these circumstances and liable *in solido* to Boudreaux. Since the damage award does not exceed the Optimum and Continental policy limits, the excess carrier Safeco will not be reached.

Therefore, we AFFIRM the district court judgment as MODIFIED by this opinion.

---

8. There are several methods to prove a person is uninsured. *See* La.Rev.Stat.Ann. § 22:1406 (D)(6) (West 1978).