David **PROVOST**

v.

Martin F. **UNGER, et al.**

Civ. A. Nos. 88–0034, 87–1471.

United States District Court, E.D. Louisiana.

Nov. 21, 1990.

Reconsideration Denied Feb. 4, 1991.

ROBERT F. COLLINS, District Judge.

## I. INTRODUCTION

The Court is called upon to resolve a conundrum concerning the insurance coverages contracted for by several competing parties. In order to resolve the problem, the Court will first describe the parties in this matter. The Court will then describe the accident that triggered this matter and the procedural history of this action. Next, the Court will examine the law applicable to this case. Finally, the Court will provide a solution to these complex and novel issues.

## II. THE PARTIES

A. *Martin F. Unger ("Unger")*:
Defendant/third party plaintiff; employee of Charles Lewis Pump Company; lessee of vehicle from Budget Rent–A–Car of New Orleans, Inc.

B. *Charles Lewis Pump Company ("Lewis")*:
Defendant/third party plaintiff; employer of Martin F. Unger; wholly owned subsidiary of Baker International.

C. *Aetna Life & Casualty Company ("Aetna")*:
Defendant/third party plaintiff; issued a policy of insurance to Baker International, parent company of Charles Lewis Pump Company.

D. *Budget Rent–A–Car Of New Orleans, Inc. ("Budget–New Orleans")*:
Third party defendant/cross-claimant; owner/lessor of vehicle driven by Martin F. Unger; subsidiary of Diversified Services, Inc.

E. *Farmers Insurance Company ("Farmers")*:
Third party defendant/cross-claim defendant; issued policy of insurance to Martin F. Unger.

F. *Columbia Casualty Company ("Columbia")*:
Third party defendant/cross-claim defendant; issued policy of insurance to Diversified Services, Inc., d/b/a Budget Rent–A–Car of New Orleans, Inc.

G. *Baker International ("Baker")*:
Parent company of Charles Lewis Pump Company; entered "Corp–Rate Agreement" with Budget Rent–A–Car Corporation.

H. *Budget Rent–A–Car Corporation ("Budget")*:
Franchisor in agreement with Diversified Services, Inc., d/b/a Budget Rent–A–Car of New Orleans, Inc.; entered

"Corp–Rate Agreement" with Baker International.

I. *Diversified Services, Inc. ("Diversified"):*
Parent company of Budget Rent–A–Car of New Orleans, Inc.; franchisee in agreement with Budget Rent–A–Car Corporation; entered "Corp–Rate Participation Agreement" with Budget Rent–A–Car Corporation.

## III. PROCEDURAL HISTORY

On December 12, 1986, a 1980 International tractor trailer rig, owned by Rex Milling Company, was involved in an accident with a 1960 Dodge, owned by Budget–New Orleans. Isaac Stevens, the driver of the tractor trailer, was employed by Rex Milling Company. Stevens' son, Rodney Stevens, and David Provost, a Rex Milling employee, were passengers in the tractor trailer at the time of the accident. The Dodge was driven by Martin F. Unger, an employee of Lewis. This ostensibly simple accident triggered three lawsuits.

First, Isaac Stevens and Rex Milling Company filed suit against Unger, Lewis, and Aetna on June 22, 1987 ("Case # 1"). On July 16, 1987, the defendants in Case # 1 filed a third party demand against Budget–New Orleans. On July 12, 1988, an order of dismissal was entered in Case # 1 because Budget–New Orleans and the plaintiffs had reached a settlement agreement. In August of 1988, Isaac Stevens and Rex Milling Company executed Receipt, Release and Hold Harmless Agreements.

Second, Rodney Stevens filed suit against Unger, Lewis, and Aetna on December 10, 1987 ("Case # 2"). The Case # 2 defendants filed third party demands against Budget–New Orleans on January 6, 1988. An order of dismissal was issued in Case # 2 on July 12, 1988 because Budget–New Orleans and the plaintiff had reached a settlement agreement. Rodney Stevens executed a Receipt, Release and Hold Harmless Agreement in August of 1988.

Finally, on December 11, 1987, David Provost filed suit against Unger, Lewis, and Aetna ("Case # 3"). The defendants predictably filed third party demands against Budget–New Orleans on January 6, 1988. American Motorist Insurance Company, Rex Milling Company's compensation carrier, intervened in Case # 3. In September of 1988, Unger, Lewis, and Aetna filed a third party demand against Farmers (Unger's personal automobile insurance carrier). On January 4, 1989, Unger, Lewis, and Aetna filed yet another third party demand—this time against Columbia, the insurance carrier for Budget–New Orleans' parent company, Diversified.

Prior to trial in Case # 3, on January 30, 1989, Provost and American Motorist Insurance Company compromised their claims. Provost's claims were settled for a total sum of $125,000.00. Aetna contributed $50,000.00; Columbia contributed $50,000.00; and Budget–New Orleans contributed $25,000.00. All parties reserved their rights to seek recovery of those sums contributed in the Provost settlement. All parties, except Farmers, participated in this settlement.

On February 1, 1989, Budget–New Orleans filed cross claims against all parties then remaining in Case # 3—that is, against Unger, Lewis, Aetna, Columbia, and Farmers. On September 29, 1989, the Court found that Budget–New Orleans was equitably estopped from seeking reimbursement of the settlement amounts paid in Case # 1 and Case # 2.

## IV. BACKGROUND

Although the procedural history of this matter is complex, the disputes are quite simple. Budget–New Orleans is attempting to trigger the insurance coverages provided by Aetna to Lewis, Farmers to Unger, and/or its own excess coverage provided by Columbia. Thus, the legal issue presented is the order of payment by Budget–New Orleans and the insurers for the Provost claim.

Budget entered a licensing agreement with Budget–New Orleans in 1962, whereby the franchisee, Budget–New Orleans, was licensed to use the Budget Rent–A–Car name. In an effort to obtain business, Budget offers a special "Corp–Rate Program" to national accounts. This is a discount program for car rental nationwide

for corporations. A corporate client tries to meet a certain volume level of business and, upon meeting that volume, receives a discount on the rental. In addition to the discount rate, "Corp–Rate" clients are also provided with greater liability insurance limits, specifically $100,000/person, $300,000/occurrence, $25,000/property damage (hereinafter "100/300/25") instead of the minimum statutory limits.

According to Budget, this liability insurance in the amount of 100/300/25 is primary coverage. It was the intent of Budget that this 100/300/25 primary coverage be honored at all franchised locations.

As part of the sales pitch to a prospective corporate client, the Budget sales person represents that the "Corp–Rate Agreement" will be honored at all participating locations. There is no dispute that Diversified's subsidiary, Budget–New Orleans, was and is a "participating location."

Baker entered the "Budget Corp–Rate Agreement" on August 29, 1985. Although the 1985 "Corp–Rate Agreement" does not address the provision of 100/300/25 coverage, such coverage is addressed in the proposal at page 19 and was in fact "part and parcel of a particular rental in that given year."

The 1985 Agreement between Budget and Baker was never terminated. In August of 1986, Budget again approached Baker with a new proposal through its representative Doug Myers. This new proposal was virtually identical to the earlier one with the only changes being in the daily rate and surcharge locations. In December of 1988, Baker again signed a "Corp–Rate Agreement" with Budget. This Agreement specifically provides that the 100/300/25 liability insurance provided is primary. During the negotiation process on this latest Agreement in 1988, there were no discussions, comments or indications that this coverage was in any way different or better than that which had been previously provided.

Mr. Myers' testimony demonstrates that there was an ongoing business relationship between Baker, Budget, and Budget–New Orleans. Neither Budget nor Budget–New Orleans indicated to Baker that the coverage provided was not primary. What was offered by Budget was liability insurance coverage of "not less than $100,000/$300,000/$25,000." Mr. Myers was never advised that this coverage was not primary.

The Court finds that the foregoing demonstrates the course of dealings between Budget and its franchisees, the dealings of Budget with its Corp–Rate clients, and Budget's intent that Corp–Rate clients, such as Baker and its wholly owned subsidiary, Lewis, be provided with primary liability insurance coverage of not less than $100,000/person, $300,000/occurrence and $25,000/property damage.

As stated previously, this accident occurred in December of 1986. James Perry, Director of Insurance and Risk Management for Baker, was notified about the accident on January 19, 1987, days after the incident took place. Mr. Perry was advised by telephone that Unger (an employee of Lewis) was told that Budget provided only the state minimum required financial responsibility limits. Mr. Perry spoke with Ms. Paula Beck, the Budget sales account representative with whom Doug Myers, on behalf of Baker, had dealt. This conversation was followed with correspondence dated February 6, 1987.

Ms. Beck, in turn, consulted with Budget and was informed that corporate clients, such as Baker and their wholly owned subsidiaries, "received the full coverage of 100/300/25 rather than only the state minimum requirement." Ms. Beck then spoke with Marty Hernandez, Corporate Director of Diversified, d/b/a Budget–New Orleans, requesting that the franchise honor the "Corp–Rate Agreement." Ms. Beck followed this with correspondence to Mr. Hernandez dated February 13, 1987.

Mr. Hernandez subsequently wrote on the bottom of Ms. Beck's letter:

2/24/87 I spoke to Paula Beck and informed her that we would honor the 100/300/25 corporate agreement.

This handwritten note was made after Mr. Hernandez obtained the proper authorization from Paul Silicato, then Executive Vice–President and Chief Operating Officer of Diversified, d/b/a Budget–New Orleans.

On March 2, 1987, Baker was informed by Ms. Beck that Budget–New Orleans would honor the 100/300/25 Agreement. Budget–New Orleans did honor the "Corp–Rate Agreement" and provided primary coverage in the amounts of 100/300/25 in connection with the accident. It appears that when Budget–New Orleans realized that David Provost's claims would exceed $100,000.00 and push Budget–New Orleans' payments over its $100,000.00 self-insured retention with Columbia. Believing that it was not required to pay any sums in excess of $100,000.00, Budget–New Orleans refused to pay any additional sums.

As indicated in the procedural history above, Budget–New Orleans, on behalf of itself, Unger, Lewis and Aetna settled the two Stevens' personal injury claims and the Rex Milling Company property damage claim. All of these settlements were verbally agreed to in July of 1988 and executed in writing in August of 1988. The Court notes that the Isaac Stevens settlement amounted to $46,000.00; the Rodney Stevens settlement amounted to $4,905.26; the Rex Milling Company property damage claim amounted to $22,098.00; and the Intervention in the Isaac Stevens claim amounted to an additional $23,000.00.

It is undisputed that in December of 1986, the Louisiana statutory minimum financial responsibility limits were $10,000/person, $20,000/occurrence and $5,000/property damage. It is also undisputed that the settlement amounts described above exceed the state's minimum requirements. Likewise, it is undisputed that the amounts were paid voluntarily and freely by Budget–New Orleans. James L. Hunter, Budget–New Orleans' claims representative, testified that the issue of other insurance coverages never arose and was not discussed until after the summer of 1988 when Budget–New Orleans first placed Columbia, its excess insurance carrier, on notice of these claims and when Budget–New Orleans realized that Columbia objected to what it viewed as a unilateral extension of coverage. Mr. Hunter stated that the Corp–Rate coverage dispute arose because of the difficulties Budget–New Orleans was having with Columbia.

Hunter further stated that the Provost case should be handled by their excess carrier and that no moneys were being sought from Aetna. Mr. Hunter further confirmed Mr. Myers' statements that Corporate renters are not advised of any conditions to the 100/300/25 coverage provided; that is, they are advised they have 100/300/25 insurance coverage without reservation.

## V. INTERPRETATION OF THE POLICIES

### A. Ranking of Coverages

For the reasons given below, the Court ranks the insurance coverages in the following manner: (1) Budget–New Orleans; (2) Columbia; (3) Aetna; and (4) Farmers.

#### 1. *Budget's Primary Position*

■ As detailed above, Budget–New Orleans initially honored and provided extended insurance coverage to Baker and in turn to Lewis and Unger, pursuant to the aforementioned Corp–Rate Agreement. Relying on *Jones v. Henry*, 542 So.2d 507 (La.1989), Budget–New Orleans asserts that a self-insurance is not insurance. Budget–New Orleans' reliance on *Jones* is misplaced. *Jones* held that self-insurance was not insurance for the purposes of the Uninsured Motorist Act.

The Louisiana Motor Vehicle Safety Responsibility Law (LMVSR), R.S. 32:851–1043, has as its purpose the elimination of the reckless and irresponsible driver from the highways by requiring that owners and drivers of motor vehicles provide proof of financial responsibility. 1952 La.Acts., No. 52.

Under the terms for R.S. 32:861, owners and operators of motor vehicles can provide proof of financial responsibility by (1) purchasing a liability policy whose limits conform to the requirements of R.S. 32:900(B)(2) or a binder for the same; (2) posting a motor vehicle liability bond to satisfy the requirements of R.S. 32:861(B); (3) depositing with the state treasurer sufficient cash and securities under the provisions of R.S. 32:861(C); or (4) becoming self-insured under the terms of R.S. 32:1042.

For a self-insurer, this "proof of ability to respond in damages," R.S. 32:851(10), is a certificate indicating the state's satisfaction that the self-insurer has and will continue to have the ability to pay judgments. R.S. 1042(B)(1). Any person who is the registered owner of more than twenty-five motor vehicles or who is the registered owner of property valued in excess of $100,000 over any encumbrances may qualify as a self-insurer. R.S. 32:1042(A).

Self-insurance then is a misnomer. It is not insurance, but instead is one of four methods by which a person can satisfy the LMVSR. The self-insurance certificate indicates only that the self-insurer possessed sufficient assets when the certificate was issued to meet the state's definition of the ability to respond in damages if found legally liable.

The Court finds that *Jones* stands for the proposition that self-insurance is a method for satisfying the LMVSR. *Id.* at 509. It does not follow that the coverage provided by Budget–New Orleans is not insurance. The Court does not read *Jones* to support Budget–New Orleans' argument.

The Court finds that Budget–New Orleans' settlement payments beyond the state minimum limits support the finding that Budget–New Orleans acknowledges, as it must, that it provided 100/300/25 coverage to Corp–Rate renters. The Court further finds that Budget–New Orleans' conduct in settling the two Stevens' claims and the Rex Milling property damage claim, as well as the Intervention, without seeking any payments from the other insurance companies, constituted an acknowledgment and an admission that primary coverage was being provided. This was acknowledged in Mr. Hunter's testimony.

In sum, if it looks like a duck, walks like a duck, and quacks like a duck, it is a duck. Likewise, Budget–New Orleans' Corp–Rate Agreement looks like insurance, functions like insurance, and has settled claims in this litigation like insurance, it is insurance. Thus, the Court finds that Budget–New Orleans' Corp–Rate Agreement is primary to the other coverages in this matter. Budget must therefore fund the first $100,-000.00 of the Provost settlement.

### 2. *Columbia's Secondary Position*

Columbia argues that the Aetna and Farmers' policies prime its policies. Columbia's argument is not well taken. Columbia's argument is premised on a faulty reading of the policy provided to Budget–New Orleans. In short, Columbia argues that Budget–New Orleans has other collectible insurance which must be exhausted before triggering its coverage.

Columbia's "other insurance" provision reads:

> If collectible insurance with any other insurer is *available to the Insured* covering a loss also covered hereunder (whether on a primary, excess or contingent basis), the insurance hereunder shall be in excess of, and shall not contribute with, such other insurance; provided that this clause does not apply with respect to excess insurance purchased specifically to be in excess of this policy, or to other insurance which is intended to provide the remainder of the limit of liability stated in the Declarations of this policy when the insurance afforded under this policy provides less than 100 percent of the limit set forth in the Declarations. (emphasis added.)

If the Aetna and Farmers' policies were available to Budget–New Orleans, Columbia's policy would not be triggered. In reality, Budget–New Orleans has its self-retention and Columbia's policy to cover any losses occasioned by its vehicles. Budget–New Orleans is not insured by Aetna or Farmers. There are no policies in evidence to support Columbia's assertion that Budget–New Orleans has other collectible insurance. The other available insurance is available to Lewis and Unger, not Budget–New Orleans. In the alternative, Columbia argues that Budget–New Orleans assumed liability for the Provost accident. This argument is contradicted by the releases entered in this matter. In fact, the releases clearly state that Budget does not admit liability and expressly denies liability to the parties.

Finding that Budget–New Orleans does not have other available insurance and that Budget–New Orleans did not assume liability for the Provost claim, the Court finds

that Columbia's policy primes both Aetna and Farmers' policies. Thus, Columbia is liable for the remaining $25,000 of the Provost settlement. Having found that Budget–New Orleans and Columbia must fund the Provost settlement, it is unnecessary to discuss in great detail the coverage provided by Aetna and Farmers.

### 3. *Aetna and Farmers' Position*

 Aetna insured Lewis. Farmers insured Unger. Lewis employed Unger. In Louisiana, an employer's insurance policy is primary to the employee's personal automobile insurance coverage. *Boudreaux v. Optimum Insurance Co.*, 854 F.2d 88 (5th Cir.1988). An employer's insurance is primary when the employee is in the course and scope of his employment. The *Boudreaux* court held, "[u]nder Louisiana law, the personal policy of an insured operating a non-owned vehicle will be the excess carrier." *Id.* at 92–93. *See also, Deane v. McGee*, 261 La. 686, 260 So.2d 669, 671 (1972) (An individual's insurance is considered excess when that individual is not in his own vehicle); *Lee v. Allstate Ins. Co.*, 274 So.2d 433, 437 (La.App. 1st Cir. 1973) (Insurer does not undertake to extend coverage to an insured who is driving another's car in the insured's occupation because such responsibility should rest with insured's employer); *Broussard v. Whitaker*, 238 So.2d 228, 232 (La.App. 3rd Cir.1970) (Employee's insurance policy is excess to employer's coverage).

The Court therefore finds that Aetna's policy primes Farmers' policy notwithstanding the other insurance clauses of both policies. Since Unger was Lewis' employee at the time of this accident, Lewis' policy primes Unger.

## VI. CONCLUSION

The insurance companies agreed to fund the Provost settlement with a reservation of rights to seek repayment. The amounts paid into the settlement are as follows: (1) Budget–New Orleans, $25,000.00; (2) Columbia, $50,000.00; (3) Aetna, $50,000.00; and (4) Farmers, zero. Hence, Budget–

New Orleans must pay Aetna $50,000.00 for its contribution to the Provost settlement. Budget–New Orleans must also pay $25,000.00 to Columbia for half of its contribution to the Provost settlement. When Budget–New Orleans reimburses the other parties, it will satisfy its obligation to contribute $100,000.00 to the Provost settlement. Columbia will be reimbursed $25,000.00. Columbia receives only half of its original $50,000.00 contribution because Columbia is obligated to cover Budget–New Orleans' exposure over $100,000.00.

## ON MOTIONS FOR RECONSIDERATION

Third party defendant, Budget Rent–A–Car of New Orleans, moves this Court to alter and amend its Judgment entered on November 21, 1990. Columbia Casualty Company also moves this Court for a new trial. Given the history of this action,[1] this Court construes these motions as motions for reconsideration. In accordance with the Court's Minute Entry of November 20, 1990, and finding that the parties merely re-urge their previously unpersuasive arguments, the motions are DENIED.

---

**1.** There has been no trial in this matter. The parties submitted briefs on the issue of the rea-

sonableness of a settlement.