KNOLL, Judge.
Ramsey Jones, Gary Guillory, Clarence Jones, Millard Roher, and Rogers Demou-chet (hereafter appellants) appeal the dismissal of their uninsured motorist claims against Hartford Insurance Company (hereafter Hartford), the uninsured motorist carrier of Ramsey Jones and Clarence Jones, on a motion for summary judgment. The trial court ruled that Hartford’s policy excluded self-insured motorists from its policy definition of an uninsured motor vehicle, and since the tortfeasor sued by appellants, U-Haul Company of Southern Louisiana (hereafter U-Haul), was self-insured, Hartford was entitled as a matter of law to summary judgment in its favor.
Appellants contend that the trial court erred: (1) in upholding the provision of Hartford’s policy which excluded uninsured/underinsured motorist coverage when the tortfeasor is self-insured; and, (2) in upholding Hartford’s exclusion when there was no evidence that Ramsey Jones and Clarence Jones, the insureds, accepted the self-insured motorist exclusion in writing. We affirm.
*1281 FACTS
This case arises from a vehicular collision which occurred in New Iberia, Louisiana on June 27, 1984, when Prentice Henry, the driver of a rented U-Haul truck, ran a stop sign at an intersection, and struck Ramsey Jones’ automobile. There were three passengers in Ramsey Jones’ vehicle, Clarence Jones, Gary Guillory, and Millard Roher. Rogers Demouchet was a passenger in the U-Haul truck.
Clarence Jones, Ramsey Jones, Rogers Demouchet, and Millard Roher instituted suit against Prentice Henry, U-Haul and Hartford, the uninsured motorist carrier, albeit through separate policies, of Ramsey Jones and Clarence Jones. Gary Guillory filed a separate action against the defendants which was later consolidated with the earlier filed action. These actions are likewise consolidated on appeal, and we shall render a separate opinion in Gary J. Guil-lory v. Prentice Henry, et al., 533 So.2d 1283 (La.App. 3rd Cir.1988).
HARTFORD’S UNINSURED MOTORIST EXCLUSION
Appellants contend that LSA-R.S. 22:1406(D), the Louisiana uninsured motorist statute, makes no exception for self-insured motorists. They argue that the in-tendment of the UM statute clearly shows that no provision in any policy which seeks to defeat uninsured motorist coverage in any manner will be sustained.
LSA-R.S. 22:1406(D)(l)(a) provides, in pertinent part, that:
“D. The following provisions shall govern the issuance of uninsured motorist coverage in this state.
(l)(a) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles became of bodily injury, sickness, or disease, including death, resulting therefrom; provided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing the coverage or selects lower limits.” (Emphasis added.)
The purpose of the uninsured motorist statute is to provide protection to an individual when he becomes the innocent victim of the negligence of uninsured motorists. Hoefly v. Government Employees Ins. Co., 418 So.2d 575 (La.1982). It is recognized that insurers may, by unambiguous and clearly noticeable provisions, limit liability and impose such reasonable conditions as they may wish upon the obligations they assume by contract, absent conflict with a statute or public policy. Oceanonics, Inc. v. Petroleum Distributing Company, 292 So.2d 190 (La.1974).
The language of the Hartford policies in question is as follows:
“ ‘Uninsured motor vehicle’ means a land motor vehicle or trailer of any type:
1. To which no bodily injury liability bond or policy applies at the time of the accident.
2. To which a bodily injury liability bond or policy applies at the time of the accident. In this case its limit for bodily injury liability must be less than the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which your covered auto is principally garaged.
3. Which is a hit and run vehicle whose operator or owner cannot be identified and which hits:
a. you or any family member;
b. a vehicle which you or any family member are occupying; or
c. your covered auto.
4. To which a bodily injury liability bond or policy applies at the time of *1282 the accident but the bonding or insuring company:
a. denies coverage; or
b. is or becomes insolvent. However, ‘uninsured motor vehicle’ does not include any vehicle or equipment:
******
2. Owned or operated by a self-insurer under any applicable motor vehicle law_” (Emphasis added.)
U-Haul’s self-insured status operates as one of several alternative methods of proof of financial responsibility under LSA-R.S. 32:851 et seq., the Motor Vehicle Safety Responsibility Law. The purpose of the Motor Vehicle Safety Responsibility Law is to insure that innocent victims of motor vehicle accidents are compensated for their loss. Ashline v. Simon, 466 So.2d 622 (La.App. 5th Cir.1985), writ denied, 472 So. 2d 28 (La.1985). Proof of financial responsibility is defined, in part, as, “Proof of ability to respond in damages for liability, on account of accidents_” LSA-R.S. 32:851(10).
LSA-R.S. 32:1042, the self-insured motorist statute applicable at the time of the accident in the present case, provides inter alia:
“A. Any person in whose name more than twenty-five motor vehicles are registered or who owns property in Louisiana assessed in his name having a value of fifteen thousand dollars or more after deducting any encumbrances thereon from its assessed valuation may qualify as a self-insurer by obtaining a certificate of self-insurance issued by the commissioner as provided in Subsection B of this Section.
B. The commissioner may, at his discretion, upon the application of such a person, issue a certificate of self insurance when he is satisfied that such person is possessed and will continue to be possessed of ability to pay judgments obtained against such person.” (Emphasis added.)
After carefully examining Hartford’s policy exclusion and the jurisprudence, we conclude that the granting of the summary judgments was proper. The language of the uninsured motorist statute clearly contemplates coverage of insured persons who become victims of motorists who are either uninsured or underinsured. U-Haul is neither uninsured nor underinsured. The certificate which U-Haul obtained from the Louisiana Department of Public Safety permitting it to act as a self-insured was issued in lieu of the insurance policy it otherwise would have had to obtain.
Appellants, nonetheless, argue that Louisiana’s uninsured motorist statute embodies public policy, and any conflicting clause in a policy of insurance is invalid. See Nall v. State Farm Mut. Auto. Ins. Co., 406 So.2d 216 (La.1981). We discern no violation in Hartford’s exclusion of self-insured motorists from the public policy definition of uninsured motorists. The purpose of the uninsured motorist statute is fulfilled in the present case: the tortfeasor (U-Haul) has undertaken to protect persons insured (appellants) who are legally entitled to recover damages by obtaining self-insured certification, as provided by LSA-R.S. 32:1042, to protect innocent tort victims.
UNINSURED MOTORIST REJECTION
Appellants next briefly argue, without citation of authority, that because the Hartford policy excluded certain categories from the definition of uninsured motorist, Hartford should have had its insureds acknowledge this “reduction of coverage” vis-a-vis a written rejection. We disagree.
The last section of LSA-R.S. 22:1406(D)(l)(a) states:
“[T]he [uninsured motorist] coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing the coverage or selects lower limits. Such coverage need not be provided in or supplemental to a renewal or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer.”
*1283 This provision is inapplicable to the question presented herein. The contract language of Hartford’s policies was exclusionary in nature; it was neither a rejection of coverage nor the selection of lower limits. As stated hereinabove, insurers may limit their liability, absent conflict with a statute or public policy, which they assume by contract. Oceanonics, supra. Appellants have not shown that the contract language conflicts with any statute or violates public policy. On the contrary, the insureds accepted uninsured motorist coverage at bargained for limits as established by their contract with Hartford.
For the foregoing reasons, the judgment is affirmed. Costs of this appeal are assessed to appellants.
AFFIRMED.