542 So.2d 507 (1989)
Ramsey JONES, Clarence Jones, Millard Roher and Rogers Demouchet
v.
Prentice HENRY et al.
No. 88-C-2948.
Supreme Court of Louisiana.
May 1, 1989.
Norman P. Foret, McBride, Foret, Rozas & Leonard, Lafayette, for applicant.
Dennis Stevens, Gibbens & Blackwell, New Iberia, Charles E. Spedale, Gaudin, Olinde & Spedale, Baton Rouge, for respondent.
DIXON, Chief Justice.
Relators Ramsey Jones, Clarence Jones, and Millard Roher sought writs from this court to appeal the dismissal of their uninsured motorist claims against the Hartford Insurance Company, the uninsured motorist carrier of Ramsey Jones and Clarence Jones.
The relators' claims arose out of an accident that occurred on June 27, 1984, in New Iberia, Louisiana. Respondent Prentice Henry, driving the U-Haul truck he had leased, ran a stop sign and struck Ramsey Jones' car. Ramsey Jones and his passengers sued Prentice Henry, U-Haul, and Hartford. Ramsey Jones' liability policy with Hartford included uninsured/underinsured motorist coverage. Clarence Jones also had a liability policy with Hartford covering a vehicle that he owned but which was not involved in the *508 accident. That policy too included uninsured/underinsured motorist coverage.
Hartford answered the relators' claims by bringing motions for summary judgment, contending that the policies of both Ramsey Jones and Clarence Jones excluded a vehicle owned by a self-insurer, such as U-Haul, from the definition of a uninsured/underinsured vehicle. The trial court granted the Hartford's motions. The court of appeal affirmed, holding that the clearly worded exclusion did not violate the public policy embodied in this state's uninsured motorist statute, R.S. 22:1406(D). Jones v. Henry, 533 So.2d 1279 (La.App. 3rd Cir.1988).
Relators contend that the appellate court erred in holding that the Louisiana uninsured motorist statute allows insurers to exclude vehicles owned by self-insurers from the policy definition of an uninsured motor vehicle. Alternatively, the relators argue that the appellate court should not have upheld the exclusion in the absence of a written acceptance by the insureds of the lower limits of coverage provided by this exclusion. After examining the purpose of the uninsured motorist law, the nature of self-insurance, and the rationale for the exclusion of self-insured vehicles from the definition of an uninsured vehicle, we conclude that the uninsured motorist statute prohibits the exclusion in the relators' policies. Accordingly, we reverse.

THE PURPOSE OF UNINSURED MOTORIST COVERAGE
Under the terms of R.S. 22:1406(D), automobile liability insurance delivered or issued for delivery in Louisiana and arising out of ownership, maintenance, or use of a motor vehicle registered in Louisiana and designed for use on public highways must provide uninsured/underinsured motorist (UM) coverage equal to the liability provided for bodily injury. The purpose of this statute is to protect insureds who become the innocent victims of uninsured/underinsured motorists' negligence. Southern American Insurance Co. v. Dobson, 441 So.2d 1185 (La.1983); Hoefly v. Government Employees Insurance Co., 418 So.2d 575 (La.1982); Booth v. Fireman's Fund Insurance Co., 253 La. 521, 218 So.2d 580 (1968). Uninsured motorist coverage is intended to protect the insured at all times against the generalized risk of damages at the hands of uninsured motorists. Block v. Reliance Insurance Co., 433 So.2d 1040 (La.1983). The statute as amended indicates that the legislature intended to provide a full recovery for innocent accident victims by making their UM coverage the primary coverage when the tortfeasors are uninsured. Bond v. Commercial Union Assurance Co., 407 So.2d 401 (La.1981).
UM coverage, however, is not mandatory; the insured can waive the coverage or select lower amounts. R.S. 22:1406(D)(1) (a)(i). A rare limitation of UM liability is permitted in policies covering school buses. R.S. 22:1406(D)(1)(a)(iv). Another restricts an insurer's UM liability in cases in which the tortfeasor's insurer is or becomes insolvent. R.S. 22:1406(D)(3). Except for these limited restrictions, the requirement for uninsured motorist coverage applies "to any liability insurance covering any accident which occurs in this state and involves a resident of this state." R.S. 22:1406(D) (1)(a)(iii).
The policies at issue in this case each contain a provision that excludes UM coverage on a vehicle "owned or operated by a self-insurer within the meaning of any motor vehicle financial responsibility law, motor carrier law, or any similar law." 1966 Standard Form, Part V: Additional Definitions ("uninsured highway vehicles"). Had the legislature intended to allow insurers to utilize such an exclusion to limit their UM liability with respect to self-insured vehicles, it could have so provided.[1]
*509 This court has already determined that an insurance company may not impose coverage limitations that are more restrictive than the coverage implicitly required by a state uninsured motorist statute.[2]Breaux v. Government Employees Insurance Co., 369 So.2d 1335 (La.1979). Since the exclusion of self-insured vehicles from the definition of uninsured motor vehicles provides less coverage than that contemplated by the statute, the exclusion is invalid.[3]

THE NATURE OF SELF-INSURANCE AND THE PURPOSE OF THE EXCLUSION
Even if R.S. 22:1406(D) could be construed to allow the exclusion of self-insured vehicles from the definition of uninsured motor vehicles, such an exclusion would be against the public policy as stated in the statute.
The Louisiana Motor Vehicle Safety Responsibility law (LMVSR), R.S. 32:851-1043, has as its purpose the elimination of the reckless and irresponsible driver from the highways by requiring that owners and drivers of motor vehicles provide proof of financial responsibility. 1952 La.Acts, No. 52. Under the terms of R.S. 32:861, owners and operators of motor vehicles can provide proof of financial responsibility by (1) purchasing a liability policy whose limits conform to the requirements of R.S. 32:900(B)(2) or a binder for the same; (2) posting a motor vehicle liability bond to satisfy the requirements of R.S. 32:861(B); (3) depositing with the state treasurer sufficient cash and securities under the provisions of R.S. 32:861(C); or (4) becoming self-insured under the terms of R.S. 32:1042.
For a self-insurer, this "proof of ability to respond in damages," R.S. 32:851(10), is a certificate indicating the state's satisfaction that the self-insurer has and will continue to have the ability to pay judgments. R.S. 32:1042(B)(1). Any person who is the registered owner of more than twenty-five motor vehicles or who is the registered owner of property valued in excess of $100,000 over any encumbrances may qualify as a self-insurer. R.S. 32:1042(A).
Self-insurance then is a misnomer. It is not insurance, but instead is one of four methods by which a person can satisfy the LMVSR. The self-insurance certificate indicates only that the self-insurer possessed sufficient assets when the certificate was issued to meet the state's definition of the ability to respond in damages if found legally liable.
Consequently, the certificate of self-insurance cannot be considered a "policy" for the purposes of uninsured motorist coverage requirements under R.S. 22:1406(D), *510 because the LMVSR does not require a person to offer the same items of coverage as offered in an insurance policy in order to satisfy its requirements. See Jordan v. Honea, 407 So.2d 503 (La.App. 1st Cir. 1981), writ denied, 409 So.2d 654 (La.1982). Therefore, self-insured vehicles are uninsured vehicles.
Even though a self-insured vehicle is uninsured, the assumption underlying the exclusion is that the self-insured can and will pay damage claims and judgments. If this be true, the argument is that automobiles owned or operated by self-insurers ought not to be considered "uninsured" because their owners or operators, having met the requirements of R.S. 32:1042, are not fiscally irresponsible.
Regardless of whether this assumption is true, it does not follow that insurers can utilize the relief granted to self-insurers to avoid the claims of those for whose protection the uninsured motorist law was enacted. The alternative methods provided in R.S. 32:861 for satisfying the motor vehicle responsibility law simply relieve those who qualify from the burden of spending their assets on insurance premiums. Those methods do not provide liability insurance.[4]
Ramsey Jones and Clarence Jones contracted with Hartford for UM coverage. R.S. 22:1406(D)(1)(a)(iii) requires that uninsured motorist coverage accompany any liability insurance covering any accident occurring in this state and involving a resident of the state. Section 1406(D)(1)(a)(i) mandates that "[n]o automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state ... unless coverage is provided therein ... for the protection of persons insured thereunder who are legally entitled to recover damages from owners of uninsured or underinsured motor vehicles...." (Emphasis added).
By excluding self-insured vehicles from UM coverage, Hartford has placed on the shoulders of its insureds "the burden of ascertaining whether the resources are available from a self-insurer ... and the burden (including the costs) of securing a recovery." 1 A. Widiss, Uninsured and Underinsured Motorist Insurance § 8.7, at 251 (2d ed. 1987). The record in this case is not yet developed with regard to either U-Haul's liability or its ability to respond in damages. Should U-Haul be liable yet unable to respond to the relators' claims, this exclusion would preclude indemnification from Hartford. The statute does not evince any intent to allow an insurer to condition its UM obligation on the tortfeasor's wealth or poverty or the status of the vehicle. See Bryant v. Gulf States Utilities Co., 460 So.2d 709 (La.App. 3rd Cir.1984).

DECREE
Accordingly, the summary judgments granted in favor of the Hartford Insurance Company are reversed, and the case is remanded to the trial court for further proceedings in accordance with this opinion. Respondent shall bear the costs of this appeal.
NOTES
[1] "Other than the implied distinction between the insured vehicle and the uninsured vehicle recognized in Breaux and Nall, the UM statute does not place any limitations on the definition of an uninsured motor vehicle. Therefore, it is unlikely that a more restrictive policy definition will be given effect. Indeed, the exclusion of an auto furnished or available to the named insured or a relative has been held to be in conflict with the UM statute and unenforceable. Bryant v. Gulf States Utilities Co. casts serious doubt on the enforceability of the exclusion for self insurers." W.S. McKenzie & H.A. Johnson, Insurance Law and Practice § 113, p. 240 (La. Civil Law Treatise vol. 15, 1986) (citations omitted).
[2] "The provisions included in the uninsured motorist coverage that restrict or limit the scope of coverage in regard to what is an uninsured vehicle often seem justifiable upon initial examination.... However, such limitations or exclusions are often invoked by insurance companies in situations when coverage seems warranted. There are a myriad of unknown and variable factors which comprise the total highway risk. In the view of this writer, the uninsured motorist insurance should be designed and construed so as to protect against injuries caused by virtually all uninsured vehicles when the collisions occur on the nation's highways and roads. Coverage limitations are violative of the public interest when persons who are injured as a consequence of the ownership, maintenance or use of uninsured vehicles on the roadways are not provided indemnification by the uninsured motorist insurance. Although the incidence of accidents involving the excluded vehicles is low relative to the number of accidents that are covered by motor vehicle insurance, the injuries that result may be as severe as any caused by vehicles that are covered either by liability or uninsured motor vehicle insurance. Thus, while the consequences for injured persons may be substantial as a consequence of an accident with uninsured vehicles that are excluded by the present coverage terms, the scope of additional risk that would be assumed by insurers as a consequence of the expanded coverage suggested... would be relatively small." 1 A. Widiss, Uninsured and Underinsured Motorist Insurance § 8.28, at 323-24 (2d ed. 1987).
[3] The insurer is not without remedy in this situation. R.S. 22:1406(D)(4) provides that an insurer is entitled to recover the extent of any payment it makes to its insured from the proceeds of any settlement or judgment in favor of its insured.
[4] R.S. 22:1406(D) and R.S. 32:861, when read together, lead to no other conclusion except that there must be a policy of insurance in effect in order to trigger the requirement of UM coverage. See Jordan v. Honea, 407 So.2d 503 (La. App. 1st Cir.1981), writ denied, 409 So.2d 654 (La.1982). Those who choose to satisfy the LMVSR law through self-insurance certificates, automobile liability bonds, or securities placed on deposit thus do not have to provide UM coverage. Since whether this arrangement contravenes the public policy underlying R.S. 22:1406(D) is not now before this court, we decline to express an opinion concerning the wisdom of allowing such a circumvention UM coverage.

This issue is, however, the subject of litigation nationwide. See generally Annotation, Applicability of Uninsured Motorist Statutes to Self-Insurers, 27 ALR4th 1266 (1984); see also Modesta v. Southeastern Pennsylvania Transportation Authority, 503 Pa. 437, 469 A.2d 1019 (1983) (self-insurer unable to avoid claims of individuals for whose protection the UM laws enacted), overruling Johnson v. Yellow Cab Co., 456 Pa. 256, 317 A.2d 245 (1974) (policy of insurance a prerequisite for required UM coverage).