David PROVOST, Plaintiff,

v.

Martin F. UNGER, et al., Defendants.

AETNA LIFE & CASUALTY CO.,
Third–Party Plaintiff,

v.

BUDGET RENT A CAR OF NEW OR-
LEANS, INC., Third–Party Defendant–
Appellant, Cross–Appellee,

v.

COLUMBIA CASUALTY INSURANCE
COMPANY, d/b/a CNA, Third–Party
Defendant–Appellee, Cross–Appellant.

Isaac STEVENS, Plaintiff,

v.

Martin F. UNGER, et al., Defendants.

AETNA LIFE & CASUALTY CO.,
Third–Party Plaintiff–
Appellee,

v.

BUDGET RENT A CAR OF NEW
ORLEANS, INC., Third–Party
Defendant–Appellant,

v.

FARMERS INSURANCE COMPANY,
INC., Third–Party Defendant–
Appellee.

No. 91–3149.

United States Court of Appeals,
Fifth Circuit.

Dec. 23, 1991.

On Petitions for Rehearing
Jan. 15, 1992.

Kevin K. Gipson, James L. Donovan, Donovan & Lawler, Metairie, La., for plaintiffs.

Julie Difulco Robles, Richard Allan Chopin, Hailey, McNamara, Hall, Larmann & Papale, Metairie, La., for Aetna Life & Cas. Co.

Michael E. Wanek, Hulse, Nelson & Wanek, New Orleans, La., for Columbia Cas. Ins. Co.

Claude D. Vasser, New Orleans, La., for Farmers Ins. Co.

Before WILLIAMS, DUHÉ, and EMILIO M. GARZA, Circuit Judges.

DUHÉ, Circuit Judge.

The parties in this case ask us to make sense of a welter of contradictory insurance policies. We therefore must divine the overall insuring intent, trying to understand how the jumble of policies may be ordered.

## I. THE FACTS

A car and a truck were involved in an accident; both vehicles were being driven by employees in the course and scope of their employment. The three people in the truck were hurt, and the truck was damaged. Rex Milling Company, which is insured by American Motorist Insurance Company, owned the truck and employed two of the people in it. The car was rented by Charles Lewis Pump Company from the New Orleans franchisee of Budget Rent A Car, which is owned by Diversified Services, and Diversified is insured by Columbia Casualty Company. Martin Unger, who was driving the car, is insured by Farmers Insurance Company. Mr. Unger is employed by Charles Lewis Pump Company, which is owned by Baker International. Aetna Life & Casualty Company is Baker's insurer. The basic question is who must pay. The parties that remain in the litigation are Budget, Columbia, Aetna, and Farmers.

All parties who suffered damage have received settlements, as follows:

| | | |
|---|---|---|
| Rex Milling | $ 22,000 | (property damage) |
| Isaac Stevens | $ 46,000 | (personal injury) |
| | $ 23,000 | (personal injury) |
| Rodney Stevens | $ 5,000 | (personal injury) |
| Subtotal | $ 96,000 | |
| Provost | $125,000 | (personal injury) |
| TOTAL | $221,000 | |

The settlements with Rex Milling, Isaac Stevens, and Rodney Stevens were completed at one time, and the Provost settlement was reached later.

Budget ordinarily provides lessees with the Louisiana statutory minimum liability insurance of $10,000 per person, $20,000 per occurrence, and $10,000 for property damage (abbreviated 10/20/10). Some corporate Budget customers, however, receive

greater insurance coverage as part of the promotional "Corp–Rate" program. Corporations try to reach a certain volume of business with Budget, and in return they receive certain advantages, including coverage of 100/300/25. Budget's New Orleans franchise has participated in this national program since at least 1978, and Charles Lewis Pump Co. was a Corp–Rate customer.

Aetna and Farmers' policies provide primary coverage, but they include "other insurance" clauses. Farmers' is an ordinary "excess" clause, providing that "[a]ny insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance." Aetna's policy says that it is "excess" insurance over "other valid and collectible insurance available to the insured whether such other insurance is stated to be primary, excess, or contingent." Similarly, Columbia's policy purports to be excess over all other available insurance. Unlike Aetna and Farmers, though, the Columbia policy is labelled a "special excess liability policy." It only applies after Budget has paid its self-retention of $100,000.

We are faced with the task of ranking these policies, all of which say specifically how they should be ranked, but all of which contradict each other on the ranking question. Before we examine the jumble, however, we must resolve some preliminary issues.

## II. PRELIMINARIES

### A. *Is Budget Self–Insured?*

■ Budget argues that it is a self-insurer and that self-insurance is not insurance, citing *Hearty v. Harris*, 574 So.2d 1234 (La.1991), and *Jones v. Henry*, 542 So.2d 507 (La.1989). Budget reasons that it is self-insured for its $100,000 self-retention under the Columbia policy, and that the insurance coverage provided to corporate customers under the Corp–Rate program is also self-insurance. Because self-insurance is not insurance according to Budget's reading of these cases, Budget provides no insurance within the meaning of the "other insurance" clauses of all of the insurance policies. Budget concludes that Farmers and Aetna should pay because Budget provides no insurance.

The law is not what Budget suggests. According to the Louisiana Insurance Code, " 'insurance' is a contract whereby one undertakes to indemnify another or pay a specified amount upon determinable contingencies." La.Rev.Stat.Ann. § 22:5(1)(a) (West Supp.1991). Budget entered into such a contract when it leased the car to Lewis. The cases that Budget cites are inapposite. They discuss whether self-insurance should be considered insurance for the purposes of uninsured motorist (UM) coverage and do not concern "self-insurance" of the type that Budget allegedly has. The Louisiana Supreme Court only observed that under the Louisiana Motor Vehicle Safety Responsibility law (LMVSR),[1] vehicle owners need not have the statutory minimum insurance if they obtain a certificate of self-insurance, which represents assets adequate to satisfy a judgment of a certain amount. The Supreme Court concluded that self-insurance in this sense is not insurance, but merely a way to meet the requirements of the LMVSR. The court decided, partly for policy reasons, that a motorist with UM coverage who was involved in an accident with a self-insured motorist could recover from the UM carrier. The carrier could then pursue the self-insured motorist. *Jones*, 542 So.2d at 509; *Hearty*, 574 So.2d at 1237–38.

The public policy that dictates that a UM carrier should pay its insured when a self-insured motorist is involved in an accident does not apply in the present case. Budget agreed to act as an insurer for its lessee, agreeing to pay for certain liabilities upon certain contingencies. To protect itself, Budget purchased insurance that would cover these liabilities that exceeded $100,000. At least on the facts of this case, the $100,000 self-retention under the Columbia policy is just a deductible. *See* William S. McKenzie & H. Alston Johnson, III, *Insur-*

---

**1.** La.Rev.Stat.Ann. §§ 32:851–:1043 (West 1989    & Supp.1991).

*ance Law & Practice* § 232 (15 *Louisiana Civil Law Treatise* 1986).

As part of a promotional program, Budget provided coverage of 100/300/25 instead of 10/20/10 to corporate customers that would reach a certain volume of business. This increased coverage was an inducement for corporations to rent vehicles from Budget. The corresponding increase in Budget's corporate business is legally significant consideration. Budget must pay as an insurer just as it received this consideration as an insurer.

### B. *Is Budget's Coverage Secondary or Primary?*

Budget also contends that its coverage is secondary to Aetna's and Farmers', arguing that the parties never discussed whether the Corp–Rate coverage was primary or secondary. Budget argues that the 1978 Corp–Rate agreement between Budget–National and Budget–New Orleans said the coverage was primary, but that the word "primary" was removed and does not appear in the 1986 agreement, which was in force at the time of the accident.

The agreement between corporate Budget and Budget–New Orleans, though, is of tangential importance in interpreting the intent of Budget–New Orleans and its lessee, Charles Lewis Pump Co. The Corp–Rate agreement between Baker (which owns Charles Lewis Pump Co.) and Budget–New Orleans in 1986 did not expressly describe the coverage as primary, but the 1988 renewal of the agreement did.

Aetna argues that because no change in this agreement was discussed, the newer agreement is a clarification of what the parties intended by the earlier one. The district court was persuaded, and we are too. Moreover, this agreement between Budget and Lewis is more relevant than the contract between Budget–New Orleans and Budget–National. Also, the director of Budget–National's claims management testified that Budget–National intended coverage to be primary. Bruce Thomsen Dep., 4 R. 906, 935–36. Budget–New Orleans should therefore provide the primary coverage in this case. Its limits of 100/300/25

are not exceeded, so it must pay the Plaintiffs' settlements. The question remains whether Budget may collect contributions from the other insurers.

### III. UNRAVELLING THE JUMBLE

#### A. *The Strands*

In the preceding section, Budget's status as an insurer was exposed. Budget provided Charles Lewis Pump Co. with primary coverage. Mr. Unger, who was driving the car in the course and scope of his employment, is covered by this insurance. This is the first strand in the jumble. The second is Farmers, which provided Mr. Unger personally with insurance. The third is Aetna, which provided Charles Lewis Pump Co. with insurance. The fourth is Columbia, which insured Budget.

We examine the first three strands together. As we concluded in the preceding section, Budget provided primary coverage. According to their policy language, Farmers and Aetna provided excess coverage. Among these three strands, Budget would have to pay.

#### B. *The Tangle*

The fourth strand (Columbia) causes the tangle. Budget, when it bought its policy from Columbia, wanted to be liable for $100,000 only. Columbia agreed to pay losses over that amount, unless other insurance is available to the insured. The questions are who the insured is, and whether other insurance is available to him or it.

Budget is certainly an insured under the Columbia policy; Budget is the named insured. Also, "any person while using, with the permission of the Named Insured, any automobile owned by, loaned to or hired for use by or on behalf of the Named Insured and any person or organization legally responsible for the use thereof" is an insured. Thus, Charles Lewis Pump Co. and Mr. Unger are insureds also. Each of them has other insurance available within the meaning of the Columbia policy.

If we were to stop here, we would conclude that Columbia was not liable, because "collectible insurance with any other insur-

er is available to the Insured covering a loss also covered hereunder." Aetna and Farmers provide insurance to the insured, and they would have to pay. But both the Aetna and Farmers policies have other insurance language of their own. They can argue with as much right as Columbia that Columbia should pay. Language in each of the policies points to other policies, hence the tangle.

### C. *The Solution*

■ We cannot enforce the policy language in all of the policies. Each policy declares it is excess over the others. Our Court has faced this impossible task before, and our rule may be stated as follows: "When insuring claims simply cannot be resolved by word-logic, courts should determine whether coverage priorities can be allocated in the light of total policy insuring intent." *Allstate Ins. Co. v. Employers Liab. Assurance Corp.*, 445 F.2d 1278, 1284 (5th Cir.1971).

■ Given this rule, we can fathom a solution. Among Budget, Aetna, and Farmers, Budget must pay. Budget paid premiums to Columbia so Budget would not be exposed for more than $100,000. Columbia must pay for all but this $100,000 self-retention. That Budget chose to insure itself by purchasing insurance from Columbia should not penalize Aetna and Farmers, who were not parties to that contract. And although we understand Columbia's complaint that we are not enforcing its policy language, it is simply impossible for us to enforce all of the contracts before us.

Our solution is bolstered by a consideration of the purpose of the Columbia policy. According to Columbia's attorney, Columbia would only have to pay if the driver and lessee were uninsured or underinsured. Only rarely, if ever, would an uninsured or underinsured entity be eligible for the Corp–Rate program. Outside the Corp–Rate program, Budget only provided the statutory minimum coverage, with a limit of $20,000 per occurrence. This amount is well under Budget's $100,000 deductible per occurrence under the Columbia policy. If we were to accept Columbia's argument, it would virtually never have to pay. This result would be absurd, and we interpret contracts to avoid absurd results.

Columbia also argues that exclusion (h) of the policy excludes coverage. Under exclusion (h), the policy does not extend to

> "liability assumed by the Insured under any contract or agreement except an incidental contract; but this exclusion does not apply to a warranty of fitness or quality of the Insured's products or a warranty that work performed by or on behalf of the Insured will be done in a workmanlike manner."

This exclusion refers specifically to "liability *assumed* by the Insured" (emphasis added), implying that contractual liability incurred in the ordinary course of business is not excluded from coverage. It does not exclude all contractual liability. The question is whether the Corp–Rate program is "liability assumed by the Insured under any contract or agreement except an incidental contract." [2]

Columbia does not complain that Budget provided 10/20/10 coverage to individuals, but only that it provided 100/300/25 coverage under the Corp–Rate program. There is no distinction between these two types of coverage other than the amount. Both were provided by Budget by contract. Both were provided in the ordinary course of Budget's rental business. Both were in effect before Columbia wrote its first insurance policy for Budget. We cannot understand how Budget could have "assumed" liability under the Corp–Rate program within the meaning of exclusion (h).

■ This conclusion is reinforced by the rules of construction. We believe our interpretation is the most reasonable, but other constructions may be reasonable as well. In short, exclusion (h) is ambiguous. Under Louisiana law, "an insurer must clearly express any exclusions from liability. Any doubt or ambiguity is resolved against the insurer." *Auster Oil & Gas, Inc. v. Stream*, 891 F.2d 570, 580 (5th Cir.1990) (citing *Benton Casing Serv. v. Avemco Ins. Co.*, 379 So.2d 225, 232 (La. 1979)). Thus, even if Columbia's interpretation were reasonable, we would choose the insured's reasonable interpretation over the insurer's.

■ Furthermore, if we were to accept Columbia's argument, it would virtually never have to pay Budget under this policy,

---

**2.** The policy defines "incidental contract" as "any written (1) lease of premises, (2) easement agreement, except in connection with construction or demolition operations on or adjacent to a railroad, (3) undertaking to indemnify a municipality required by municipal ordinance, except in connection with work for the municipality, (4) sidetrack agreement or (5) elevator maintenance agreement."

as explained above.[3] We do not believe that the parties intended such an absurd result. Thus, Budget must pay $100,000 (its self-retention) and Columbia must pay the rest.

## D. *Counting*

We next must decide whether the first group of settlements, totalling $96,000, count toward the $100,000 deductible. It does. Aetna argues that because the first group of settlements released Aetna, Budget lost any rights it may have had to pursue Aetna for contribution or reimbursement. The district court held that Budget was equitably estopped from pursuing Aetna for contribution toward the first $96,000. We vacate that part of the lower court judgment because Aetna, as we rank the policies, is not liable at all. Thus, Budget must contribute a total of $100,000 toward all of the settlements. It has paid $96,000 for the first group, so it owes $4000 more toward the Provost settlement. Columbia, as Budget's insurer, must pay the remaining $121,000.

## IV. ATTORNEYS' FEES AND PENALTIES

■ Budget argues that Columbia is liable for failure to settle. Louisiana law provides for penalties and attorneys' fees when an insurer arbitrarily and capriciously fails to settle a claim. La.Rev.Stat.Ann. § 22:658(B) (West Supp.1991). In this case, however, there is no evidence of any arbitrary or capricious conduct by Columbia. Budget contends arbitrary or capricious conduct need not be shown to collect penalties and attorneys' fees under the statute, but we disagree. The best authority that Budget cites is *Allen v. Keeney*, 532 So.2d 521 (La.Ct.App. 1st Cir.1988). That case involved a general liability policy, not a special indemnity policy. *Id.* at 521. Columbia provided an indemnity contract, not a liability policy.

In the context of providing a defense, the difference between a liability policy and an indemnity contract is crucial. In the words of the Louisiana Supreme Court, "a cause of action for indemnification for cost of defense does not arise until the lawsuit is concluded and defense costs are paid.... [I]t is the terms of the indemnity agreement which govern the obligations of the parties." *Meloy v. Conoco, Inc.*, 504 So.2d 833, 839 (La.1987) (answering certified question from federal Fifth Circuit); *see also Meloy*, 817 F.2d 275 (5th Cir.1987) (conforming to the answer). The terms of the indemnity agreement obligate Columbia to bear only a portion of defense costs, and then only if the claim is over the self-retention. Columbia, therefore, is only liable for a portion of the defense fees, as provided by the agreement. Because Budget has not shown arbitrary or capricious conduct, Columbia is not liable for attorneys' fees and under the statute. We remand for determination of the amount of attorneys' fees that Columbia owes under the agreement.

## V. CONCLUSION

We affirm that part of the district court judgment that held Budget a primary insurer and Columbia the secondary insurer after Budget paid the first $100,000. We vacate that part of the district court judgment that held Budget was equitably estopped from counting the $96,000 from the first group of settlements toward its $100,000 self-retention. We remand for determination of the amount of attorneys' fees that Columbia must pay.

**AFFIRMED IN PART, VACATED IN PART, and REMANDED.**

## ON PETITIONS FOR REHEARING

### Jan. 15, 1992.

DUHÉ, Circuit Judge:

Before the Court are one Petition for Rehearing, filed by Aetna Life & Casualty Co., Charles Lewis Pump Co., and Martin F. Unger, and another Petition for Rehearing filed by Columbia Casualty Co.

A total of $221,000 was paid in settlement to the Plaintiffs in these cases. *Provost v. Unger*, 949 F.2d 161, 162–63 (5th Cir.1991). Of this $221,000, we decided that "Budget must pay $100,000 (its self-retention) and Columbia must pay the rest." *Id.* at 166. We understand that the Plaintiffs have already been paid, and that the parties paying the settlement reserved their right to litigate the question of who

---

**3.** Under Louisiana law, rental car agencies are not liable "for the negligent actions of a lessee operating the leased vehicle in accordance with the terms of the lease." *Hearty v. Harris*, 574 So.2d 1234, 1242 (La.1991) (construing La.Rev.Stat.Ann. § 32:1041 (West Supp.1991)). This statute carves out an exception from the general rule that car owners are liable for the damage done by their cars. Budget is excused from responsibility for the negligent acts of its lessees under § 32:1041, as construed by the Louisiana Supreme Court. Thus, Columbia cannot argue persuasively that its policy covered substantial tort liability arising vicariously through the acts of lessees.

should ultimately bear the liability. Since Aetna has been found not liable in this case, it should recover its settlement contribution of $50,000. We expect all of the parties to settle up so that Budget pays $100,000 of the $221,000, and that Columbia pays the remaining $121,000. We thought this was clear from our opinion.

Aetna has not cited an adequate legal basis for us to award it attorneys' fees, interest, or costs. Also, Columbia's petition is without merit. Therefore, other than the foregoing, the petitions for rehearing are DENIED, and the prior opinion of this court is REAFFIRMED and REINSTATED.