BONIN, J.,
Dissents and Assigns Reasons.
14 respectfully dissent.
The majority’s result in this case is premised on our holding in Plumb v. City of New Orleans, 03-0269 (La.App. 4 Cir. 8/6/03), 854 So.2d 426. But Plumb was wrongly decided. The fact that the City of New Orleans is uninsured is not changed by a court’s calling the City self-insured. The decision today deprives Jane Sumner of obtaining the uninsured motorist benefits for which she contracted with her own insurance companies.
In Part I below I discuss the proper interpretation of the insurance policy provisions, especially with respect to the exclusion upon which the insurers rely. I consider in Part II the provisions of the Motor Vehicle Safety Responsibility Law which do not apply to the City of New Orleans, a political subdivision of the state, but which both the Plumb decision and today’s decision misapply to the City. Well-established principles of statutory construction demand that Plumb be overruled; the Plumb court engaged in lawmaking, not law application or interpretation. Finally, I explain in Part III that there is no good reason to distort the UM law by labeling the City a self-insured, but there are several bad reasons. I conclude in Part IV that granting the summary judgment is legal error.
I begin with the well-recognized precepts for interpretation of insurance policies. An insurance policy is an aleatory contract. See Succession of Fannaly v. Lafayette Ins. Co., 01-1355, p. 3 (La.2/25/03), 805 So.2d 1134, 1137. La. Civil Code art. 1912 provides:[1]
A contract is aleatory when, because of its nature or according to the parties’ intent, the performance of either party’s obligation, or the extent of the performance, depends upon an uncertain event.
Comment (f) of the Revision Comments-1984 makes plain the import of an aleatory contract:
According to this text, the chance that an aleatory contract contemplates may result in one party not having to perform at all, as in the case of an insurance contract where the risk does not occur, ...
The significance of this legal concept in our law is that the insurer’s obligation to pay is contingent upon, the occurrence of an event which may never happen. In ordinary language, both parties are gambling; both are taking a chance.
Beyond being an aleatory contract, an insurance policy or contract is also a nominate contract. La. Civil Code art. 1914. Thus, an insurance policy is subject to the general principles concerning contracts set *938 forth in the Civil Code. See La. Civil Code art. 1915. But, importantly, an insurance contract is also subject to some special rules “when those rules modify, complement, or depart” from the more general codal articles. La. Civil Code art. 1916.
An insurance policy is a conventional obligation that constitutes the law between the insured and the insurer, and the agreement governs the nature of their relationship. La. Civil Code art. 1983. The extent of coverage is determined from the intent of the parties as reflected by the words of the insurance policy. Peterson v. Schimek, 98-1712, p. 4 (La.3/2/99), 729 So.2d 1024, 1028. An insurance policy, as a contract between the parties, should be construed employing the general rules of interpretation of contracts set forth in the Louisiana Civil Code. Cadwallader v. Allstate Ins. Co., 02-1637, p. 3 (La.6/27/03), 848 So.2d 577, 580. The contractual nature of the insurance policy underlies La. R.S. 22:881:
Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to or made a part of the policy.
Absent a conflict with statutory provisions or public policy, insurers are entitled to limit their liability and to impose and enforce reasonable conditions upon the policy obligations they contractually assume. Louisiana Ins. Guar. Ass’n. v. Interstate Fire & Casualty, 93-0911 (La.1/13/94), 630 So.2d 759, 563. When the language of a policy is unambiguous and clear, the insurance contract must be enforced as written. When the wording is clear, the court lacks authority to alter or change the terms of the policy under the guise of interpretation. See Sher v. Lafayette Ins. Co., 07-2441, p. 5 (La.4/8/08), 988 So.2d 186, 192-93; Louisiana Ins. Guar. Ass’n, supra, 93-0911 at p. 5, 630 So.2d at 763.
Our civilian code further addresses contract interpretation. La. Civil Code art. 2051 states: “Although a contract is worded in general terms, it must be interpreted to cover only those things it appears the parties intended to include.” We are guided by La. Civil Code art. 2046, which states:
When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent.
See also Crabtree v. State Farm Ins. Co., 93-0509 (La.2/28/94), 632 So.2d 736, 741 (stating: “An insurance policy should not be interpreted in an unreasonable or [4strained manner so as to enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion.”).[2]
Ms. Sumner’s policy with Progressive[3] contains the following agreement regarding her UM coverage:
We will pay for damages which an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury:
1. Sustained by an injured person;
2. Caused by an accident; and
3. Arising out of the ownership, maintenance, or use of an uninsured motor vehicle.
*939 An “uninsured motor vehicle’’ does not include any motorized vehicle or equipment:
a. owned by you or a relative;
b. owned or operated by a self-insurer under any applicable vehicle law, except a self-insurer that is or becomes insolvent; ... (emphasis added)
From these principles of insurance policy interpretation, unless the exclusion conflicts with statutory provisions or public policy, Progressive must pay for damages which Ms. Sumner is entitled to recover from an owner or operator of an uninsured vehicle unless the vehicle is “owned or operated by a self-insurer under any applicable vehicle law ”. Under the facts of this ease, in order to avoid payment to Ms. Sumner, Progressive must establish that the City under an applicable vehicle law is a “self-insurer.”
At one time a UM policy provision which excluded self-insured vehicles from coverage would have been inoperative. See Jones v. Henry, 542 So.2d 507 (La.1989). The Lawmaker, however, abrogated that holding and La. R.S. 22:1295, which governs uninsured motorist coverage in insurance policies, now provides in pertinent part:
|sThe following provisions shall govern the issuance of uninsured motorist coverage in this state:
(2)(a) For the purpose of this coverage, the terms “uninsured motor vehicle” shall, subject to the terms and conditions of such coverage, be deemed to include an insured motor vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits specified therein because of insolvency.
(b) For the purposes of this coverage, the term uninsured motor vehicle shall, subject to the terms and conditions of such coverage, also be deemed to include an insured vehicle when the automobile liability coverage on an insured motor vehicle is less than the amount of damages suffered by an insured and/or the passengers in the insured’s vehicle at the time of the accident, as agreed to by the parties and their insurers or as determined by final adjudication.
(3) Any party possessing a certificate of self-insurance as provided under the Louisiana Motor Vehicle Safety Responsibility Law, shall be an “insurer” within the meaning of uninsured motorist coverage provided under the provisions of this Section. This provision shall not be construed to require that a party possessing a certificate of self-insurance provide uninsured motorist coverage or that such coverage is provided by any party possessing such a certificate, (all emphasis added)
Simple interpretation of the insurance policy contract requires, then, that Progressive must establish that the City of New Orleans is a “self-insurer” under the foregoing controlling and applicable UM law. But that law incorporates a provision of the Louisiana Motor Vehicle Safety Responsibility Law in order to make the determination. We turn then to the provisions of that law to see if the City is a self-insurer “under any applicable vehicle law”.
II
Because the Louisiana Motor Vehicle Safety Responsibility Law does not apply to a political subdivision such as the City, the City cannot qualify as a “self-insurer” under that law.
| r,The MVSRL is directed to third-party protection.[4] The law’s central feature is *940 the provision for compulsory liability insurance on motor vehicles registered or operated in Louisiana with minimum limits of 10/20/10.[5] La. R.S. 32:900 B(2)(a)-(c). The law does permit the substitution of other security in lieu of a liability insurance policy with those minimum limits; these substitutes include liability bonds to satisfy judgments arising from vehicular accidents, cash deposits with the state treasurer, or a certificate of self-insurance. See La. R.S. 32:861 A. Failure of a driver or owner to comply with the compulsory requirements and with the proof of compliance requirements can result in an array of administrative, criminal, and civil sanctions and penalties. See La. R.S. 32:863.1 C-I (impoundment of the vehicle, revocation of licenses and vehicle registration along with fines and reinstatement fees), 865 (fines up to maximum of $10,000 upon conviction), and 866 (reduction in recovery for civil damages: “pay to play”).
As part of the overall MVSRL, La. R.S. 32:1042 specially provides for self-insurance:
A. Any person in whose name more than twenty-five motor vehicles are registered or who owns property in Louisiana assessed in his name having a value of one hundred thousand dollars or more after deducting any encumbrances thereon from its assessed valuation may qualify as a self-insurer by obtaining a certificate of self-insurance issued by the assistant secretary of the office of motor vehicles as provided in Subsection B of this Section.
B. (1) The assistant secretary may, at his discretion, upon the application of such a person, issue a certificate of self-insurance when he is satisfied that such person is possessed and will continue to be possessed of ability to pay judgments obtained against such person.
(2) The assistant secretary shall assess a fee of one hundred dollars for each certificate.
|7C. Upon not less than five days notice and a hearing pursuant to such notice, the commissioner may cancel upon reasonable grounds a certificate of self-insurance. Failure to pay any judgment within sixty days after such judgment has become final shall constitute a reasonable ground for the cancellation of a certificate of self-insurance. The commissioner, upon receipt of certified copy of a final judgment, shall forthwith suspend the license and registration, or any nonresident’s operating privileges, of any person, or any legal entity, against whom such judgment was rendered, except as otherwise provided in R.S. 32:892 and R.S. 32:895.
D. Any person or any legal entity whose certificate of self-insurance has been cancelled for his failure to pay a final judgment shall not be eligible for the renewal or reissuance of a certificate of self-insurance for a period of five years from the date of cancellation, (emphasis added)
§ 32:1042 by its plain terms applies only to persons who must comply with the financial responsibility requirements of the Motor Vehicle Safety Responsibility Law. Part A of § 32:1042 allows eligible and qualified persons to comply with the law *941 “by obtaining a certificate of self-insurance issued by the assistant secretary of the office of motor vehicles.” Part B of § 32:1042 allows for the issuance of the certificate when the assistant secretary “is satisfied that such person is possessed of and will continue to be possessed of ability to pay judgments obtained against such person.” (emphasis added) A self-insurance certificate can be cancelled for the certificate holder’s “[fjailure to pay any judgment within sixty days after such judgment has become final.” Cancellation of a self-insurance certificate renders a person ineligible for renewal or reissuance of a certificate of self-insurance for a period of five years. See La. R.S. 32:1042 D.
Importantly for our purposes, the critical difference between an “uninsured” person and a “self-insured” person is the certificate of self-insurance. A certificate of self-insurance satisfies the requirement to obtain the compulsory minimum liability insurance. See La. R.S. 32:861 A(l) and 32:872 C(4). A certificate of |8self-insur-ance also satisfies the requirement for proof of compliance that the driver or owner is financially responsible to third parties. See La. R.S. 32:863.1(A)(4) and G(2), and 32:897(4).
The only reasonable interpretation of the incorporation of the self-insurer provisions of the MVSRL into the UM law is that a party without liability insurance and without a certificate of self-insurance is uninsured.
The Motor Vehicle Safety Responsibility Law is Chapter 5 of Title 32, and La. R.S. 32:1041 A clearly provides:
This Chapter shall not apply with respect to any motor vehicle owned by the United States, this state or any political subdivision of this state, or any municipality therein, a bona fide organized public volunteer fire department which owns and operates those specially equipped motor vehicles for fire fighting purposes, nor, except for R.S. 32:871 and 905, with respect to any motor vehicle which is subject to the jurisdiction of the Louisiana Public Service Commission, or to any motor vehicle subject to registration under the single state registration for motor carriers authorized by 49 U.S.C. 11506, or as otherwise permitted by federal law, or to carriers of persons operating over specified routes with fixed termini and predominantly under franchises or indeterminate permits granted by an incorporated municipality and who are subject to the regulatory jurisdiction of such municipality, (all emphasis added)
§ 32:1041 A could hardly be plainer: its words simply mean that none of the provisions of the Motor Vehicle Safety Responsibility Law, including the provisions of § 32:1042, applies to a political subdivision such as the City of New Orleans.
“Legislation is the solemn expression of legislative will.” La. Civil Code art. 2. The Lawmaker has given us specific instructions on applying its will as expressed in these statutes. La. R.S. 1:3 provides:
Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language. Technical words and phrases, and such others as may have acquired a peculiar 19and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.
The word “shall” is mandatory and the word “may” is permissive.
Directly to the point, La. R.S. 1:4 provides that “[wjhen the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit.”
*942 But that is precisely what was done in Plumb. Plumb disregarded the inapplicability of the Motor Vehicle Safety Responsibility Law to a political subdivision, and improperly applied the Motor Vehicle Safety Responsibility Law to the City of New Orleans in order to conclude that the City is self-insured for uninsured motorist coverage. In order to do that, Plumb found that one portion of § 32:1042 applied (self-insured status), but another portion did not apply (the requirement of a certificate). Logical consistency requires a conclusion that § 32:1042 either does apply to a political subdivision or it does not; § 32:1041 makes it clear that it does not. Plumb should be overruled.
Progressive cannot as a matter of law establish that § 32:1042 is a vehicle law which is “applicable” to the City of New Orleans.
Ill
The fact that the MVSRL does not apply at all to the City is no reason to distort the UM law and try to stuff a governmental entity into the policy’s exclusion for self-insurers.
Only Ms. Sumner’s first-party insurers obtain an advantage by such action. By labeling the City a self-insured, the UM insurers in this case obtain a result that they could not obtain by attempting to exclude government vehicles from UM coverage. In Mednick v. State Farm Mutual Automobile Ins. Co., 09-183 (La.App. 5 Cir. 1/26/10), 31 So.3d 1133, the fifth circuit recently considered a policy that |inexcluded from UM coverage damages caused by the operation of a government-owned vehicle. The Mednick court stated
Considering the expressed intent of Louisiana’s insurance Code and [its] uninsured/underinsured motorist provisions, we now hold that the exclusion of government owned vehicles from uninsured/under-insured motorist coverage thwarts the expressed public policy of the statute setting forth the purpose of such coverage, namely to protect those innocent insureds who are harmed by an uninsured or underinsured tortfeasor.
Mednick, p. 6-7, 31 So.3d 1137.
Surely the City obtains no advantage by being labeled self-insured rather than uninsured, which it is. The City does not on that account escape liability or responsibility. If Progressive were to fulfill its contractual obligation and were to pay Ms. Sumner, by law it has a right of subrogation against the City. See La. R.S. 22:1295(4); see also Jones v. Henry, 542 So.2d at 509, n. 3, and Bosch v. Cummings, 520 So.2d 721, 723 (La.1988) (holding, “The uninsured motorist who pays all of its insured’s damages is completely subrogated to his claim against the uninsured or un-derinsured tortfeasor.”)
Of course, the City may delay (or avoid) payment to Progressive just as it will do to Ms. Sumner (which is a practical reason why her UM insurer should be held to its contractual obligation). If Ms. Sumner prevails against the City of New Orleans in her claim for damages, payment is never due or never overdue because no court can command payment of its judgment by the City. La. Const, art. XII, § 10(C) provides in pertinent part:
... no public property or public funds shall be subject to seizure.... No judgments against the state, a state agency, or a political subdivision shall be exigi-ble, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which the judgment is rendered.
La. R.S. 13:5109 B(2) also provides:
In Any judgment rendered in any suit filed against the state, a state agency, or a political subdivision, or any compro *943 mise reached in favor of the plaintiff or plaintiffs in any such suit shall be exigi-ble, payable, and paid only -out of funds appropriated for that purpose by the legislature, if the suit was filed against the state or a state agency, or out of funds appropriated for that purpose by the named political subdivision, if the suit was filed against a political subdivision.
“Louisiana courts have repeatedly held that judgment creditors cannot mandamus political subdivisions to appropriate funds for payment of a judgment rendered against the respective political subdivisions.” Hoag v. State, 04-0857, pp. 6-7 (La.12/1/04), 889 So.2d 1019, 1023, citing, inter alia, Jones v. Traylor, 94-2520 (La.App. 4 Cir. 8/23/95), 660 So.2d 933. Whether to pay a judgment against a political subdivision is discretionary with the political subdivision. Hoag, 04-0857 at pp. 7-8, 889 So.2d at 1024. Therefore, the City of New Orleans cannot be compelled by a court to pay any judgment whatsoever in favor of Ms. Sumner.
The inquiry then, factually or legally, into a political subdivision’s “solvency” is fruitless. Whether the City is solvent or insolvent, the decision whether and when to pay a judgment, or settle a pending case, is wholly within the discretion of the City of New Orleans.
The parties agree that the Progressive policy itself supplies no definition either of “solvency” or of “insolvency.” In order to define “insolvency,” the majority opinion states that “our legal heritage requires us to look no further than our Civil Code, which states that ‘[a]n obligor is insolvent when the total of his debts exceeds the total of his fairly appraised assets.’ La. Civ.Code. Art. 2037.” Ante, p. 6. The City of New Orleans can pass this test. The City’s assets include an international airport, a railroad, large public parks, roads, highways, bridges, and courthouses, to name just a few of them. The Article 2037 test allows a | ^factfinder to employ Coleridge’s “willing suspension of disbelief’[6] in the face of the City’s failure, refusal, or inability to pay any judgments for more than five years. In other words, we can make believe that the City is not insolvent. But, on this point too, I disagree with the majority that we need look no further than our Civil Code; to the contrary, our Civil Code would be the beginning, not the end, of the inquiry for an appropriate definition of insolvency for a self-insured, which is not provided in the policy itself or, it seems, in the law. I am compelled by this court’s refusal to follow the Lawmaker’s instructions on statutory construction and its insistence on following a wrongly decided precedent to address this issue as well. Because a party possessing a certificate of self-insurance “shall be an ‘insurer’ within the meaning of uninsured motorist coverage,” La. R.S. 22:1295(3), a less inappropriate definition of or test for insolvency is the one found in the Insurance Code, not the Civil Code. A simpler but tougher test for insolvency for an insurer is “the inability to pay its obligations when they are due.” La. R.S. 22:2003(3)(a)(ii) and (b). Of course, the City escapes even under this test because, being a political subdivision, its obligations are never “due.” And, further, an appropriate determination for the insolvency of a self-insured might be found in La. R.S. 32:1402 C, which provides:
Upon not less than five days notice and a hearing pursuant to such notice, the commissioner may cancel upon rea *944 sonable grounds a certificate of self-insurance. Failure to pay any judgment within sixty days after such judgment has become final shall constitute a reasonable ground for the cancellation of a certificate of self-insurance. The commissioner, upon receipt of certified copy of a final judgment, shall forthwith suspend the license and registration, or any nonresident’s operating privileges, of any person, or any legal entity, against whom such judgment was rendered, except as otherwise provided in R.S. 32:892 and R.S. 32:895. (emphasis added)
|iaA certificate holder’s mere failure to pay a judgment within sixty days of the finality of the judgment might ipso facto satisfy a test for insolvency. But of course a political subdivision such as the City of New Orleans, according to Plumb, is exempt from the requirements of obtaining or providing a certificate of self-insurance. See Plumb, 03-0269, p. 4, 854 So.3d at 429. Thus, when the tortfeasor is a governmental entity such as the City, Progressive’s policy’s stipulation that it would pay if the self-insurer is or becomes insolvent is meaningless. In effect, the majority construes the policy to exclude governmental vehicles, which is contrary to the holding in Mednick, supra. Because the policy’s other provision respecting a self-insurer (“except a self-insurer that is or becomes insolvent”) is meaningless when applied to a political subdivision such as the City, one might argue that such is further support that the absurd result is the one construing the City as a self-insurer.
IV
The City does not possess liability insurance and it is uninsured. An uninsured political subdivision is not self-insured under § 32:1042 because these laws do not apply to it. A rose by any other name is still a rose. I conclude that the only proper finding, both legally and factually, is that the City of New Orleans is uninsured for the purposes of applying the UM law. See La. R.S. 22:1295. The motion for summary judgment in favor of Progressive should have been denied as a matter of law. I, therefore, dissent.

. See also La. C.C. art. 2982: "The aleatory contract is a mutual agreement, of which the effects, with respect both to the advantages and losses, whether to all parties or to one or more of them, depend upon an uncertain event.”

. See also Smith v. Burton, 04-2675, pp. 5-6 (La.App. 1 Cir. 12/22/05), 928 So.2d 74, 78-79.

. Whenever I reference Progressive, it includes the umbrella UM insurer Vigilant, which issued a "following-to-form” excess policy.

. For the use of "third-party” and "first-party" terminology, see, e.g., Wolfe World, LLC v. *940 Stumpf, 10-0209 (La.App. 4 Cir. 7/7/10), 43 So.3d 311, and Louisiana Joint Underwriters of Audubon Insurance Co. v. Johnson, 09-0336 (La.App. 4 Cir. 9/2/09), 20 So.3d 528.

. The minimum limits, applicable at the time of this case, are $10,000 because of bodily injury to or death of one person in any one accident, $20,000 because of bodily injury to or death on two or more persons in any one accident, and $10,000 because of destruction of or damage to property.

. See Samuel Taylor Coleridge, Biographia Literaria or Biographical Sketches of My Literary Life and Opinions (1817).